**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAVIER A. SALAZAR,

    Defendant - Appellant.

No. 02-2018
D.C. No. CR-00-1395 JP
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **McKAY**, Circuit Judge.

In a two-count indictment filed on October 19, 2000, in the United States District Court for the District of New Mexico, Javier A. Salazar ("Salazar") was charged as follows: Count 1, with unlawfully possessing, on May 17, 2000, with an intent to distribute less than 500 grams of a mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841 (b)(1)(C), and 18 U.S.C. § 2; Count 2, with unlawfully possessing, on June 3, 2000, with an intent to distribute more than 500

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

grams of a mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 2.  At trial, Salazar admitted to all of the elements of the two charges and his defense was entrapment by a government informant as to each of the two counts, each of which was based on a different transaction occurring on a different date.  After the jury had deliberated for several hours, the jury sent a note to the court asking if they could be considered "hung" at that time.  In response to that note, the district court responded as follows:

> Folks, my understanding from your note is that you're having a little trouble reaching a verdict.  And rather than, at this point, declaring things over, I'm going to send you home for the evening and ask you to report back tomorrow morning.

On the following morning, the district court, without objection, gave the jury the so-called *Allen* instruction, which read as follows:

> Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion, if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.
> You are not partisans, you are judges, judges of the facts.  Your sole interest is to ascertain the truth from the evidence in the case.
> Now, I am not pressuring you to go anywhere that your conscience dictates that you should not go after listening to the evidence in the case.  And you've got the instructions about what the law is.
> . . . .
> As I say, I am not trying to pressure you one way or the

other in terms of which way you ought to go, because I don't have an opinion on this case. I've just been here to try to make sure that the process is a fair one. And the decision remains with you. And if, at the end of your deliberations – or if you reach a point where there just is no place else to go, we'll accept that. I mean, you've done your job.

The jury then resumed its deliberation. A short time later the jury sent another note to the court, which read as follows:

Sir, could you please explain to us in easier terms "inducement" in layman's term? And "promise of reward" and "friendship" in the meaning of "inducement." Some examples please.

In this connection, the district court had previously given the jury instructions on the defense of entrapment and, without objection, gave the following instruction on "inducement:"

Inducement is any conduct on the part of the government agent or informant that creates a substantial risk than an indisposed person or otherwise law-abiding citizen would commit the offense. Inducement may arise from persuasion, fraudulent misrepresentations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship. However, evidence that a government agent approached, solicited or requested that the defendant engage in criminal conduct, standing alone, is insufficient to constitute inducement.
Thus, if you find from the evidence that defendant Salazar was induced to commit the crime addressed in the indictment, and at the time was not predisposed to otherwise commit the crime, you must acquit the defendant.

In response to the note from the jury asking for a further definition of the word "inducement," the district court responded to the jury in open court as follows:

- 3 -

> I see, Ms. Dorsey [jury foreperson], that we have another question, and I'm going to share that with the lawyers here in just a moment, and we'll take that up and see if there is anything that we can give you beyond what's already in the instructions. I'm sure that you've already read them repeatedly. On the word "inducement" we may be not be able to do any better than that, but we'll see what we can do.
>
> . . . .
>
> I, actually, have a full schedule starting at 8:30 of sentencing and pleas to take today, but we'll get right on this and see what we can do with it and get an answer to you as quickly as we can, even if it's nothing more than, "please re-read Instruction Number whatever." Okay?

The jury then returned to its deliberations, and the district court instructed the prosecutor and defense counsel to take a few minutes to research some examples of "inducement." However, the jury, in about ten minutes, returned a verdict before the district court had further conferred with counsel about the matter or given any additional instruction on inducement. No objection was made at trial to receiving the jury's verdict without further instruction to the jury on "inducement."

The jury by its verdict acquitted Salazar on Count 1, but convicted him on Count 2. Salazar was later sentenced to 41 months imprisonment followed by three years of supervised release.[1] Salazar appeals.

On appeal, counsel raises two issues: (1), "[w]hether the modified *Allen* charge given to the jury was coercive;" and (2), "[w]hether it was plain error for the district court

---

[1]After the jury's verdict was announced in open court, the district court polled the individual jurors, each juror stating that the verdict as read in open court was his, or her, verdict.

- 4 -

not to answer a jury question when the jury indicates through its query that it is confused as to an important legal element in the case."

Neither of the two matters urged in this court as grounds for reversal was raised in the district court. Thus, counsel necessarily relies on the "plain error" rule. Fed. R. Crim. P. 52(b). That rule provides that a "[p]lain error that affects substantial rights may be considered even though it was not brought to the court's attention." If there be "error" that is "plain" and affects "substantial rights," a court of appeals has "discretion" which shall not be exercised unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 732-34 (1993).

### 1. *Allen* Instruction

An *Allen* instruction has long been sanctioned, depending, of course, upon its content and the context in which it is given, and we have previously held that, although it is "preferred practice" that it be given along with the other instructions before the jury commences its deliberations, "there is no per se rule against giving an *Allen* charge after a jury has commenced deliberations." *United States v. Arney,* 248 F.3d 984, 988 (10th Cir. 2001). As above stated, in the instant case the *Allen* instruction was not given to the jury before it began its deliberations but was given after the jury indicated that it might be "hung."

The "content" of the *Allen* instruction given to the jury in the present case is in accord with prior pronouncements of this court. It is a so-called "modified" charge that

was directed to all members of the jury rather than being directed to "those holding the minority view." *Id.* For extensive background on this matter, *see United States v. McElhiney,* 275 F.3d 928 (10th Cir. 2001). In *McElhiney,* we held that the *Allen* instruction given the jury was "impermissibly coercive" and reversed the conviction. However, the facts and circumstances of the present case are far different than those in *McElhiney*, and the *Allen* instruction given in the instant case was not "impermissibly coercive."

## 2. Inducement

As above stated, the district court instructed the jury on the defense of entrapment and in connection therewith gave a separate instruction on "inducement," and there was no objection to either. When the jury sent a note to the court indicating that they would like an additional instruction on "inducement," the district court, in open court with counsel and the jury present, verbally responded to the note, the response thereto being set forth above. That response was candid and impartial in tone, and stated, *inter alia,* that there well might not be "anything that we can give you beyond what's already in the instructions," the court adding "I'm sure you have already read through them repeatedly." As an addendum to the foregoing, the district court again stated "[o]n the word 'inducement,' we may not be able to do any better than that, but we'll see what we can do." It was in this setting that the jury resumed its deliberations and shortly thereafter returned its verdict.

In our view, under the totality of the circumstances, we fail to detect "error," which was "plain error" and affected "substantial rights," let alone "plain error" that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732.

There is some suggestion by counsel that since the jury acquitted Salazar on Count 1 and convicted him on Count 2, such somehow shows that the jury was "confused" on the question of "inducement." The government, in turn, argues that the two verdicts, rather than being inconsistent, were in fact consistent and quite understandable. In this regard, the government concedes that as to the first possession on May 17, 2000, the jurors might well have thought there was "inducement," but that as to the second possession, occurring some three weeks later on June 3, 2000, the jury might well have concluded, as it did, that Salazar was not induced or entrapped a second time when he was attempting to sell four times the amount of cocaine involved in the first sale. In any event, we decline to speculate on that matter. "[A] verdict will not be upset on the basis of speculation." *Howard D. Jury, Inc. v. R & G Sloane Mfg. Co.,* 666 F.2d 1348, 1351 (10th Cir. 1981).

Judgment affirmed.

ENTERED FOR THE COURT,

Robert H. McWilliams
Senior Judge