**F I L E D**

**UNITED STATES COURT OF APPEALS**

**March 16, 2007**

**TENTH CIRCUIT**

DIRECTV, INC.,

      Plaintiff-Appellee,

v.

ALAN J. CRESPIN,

      Defendant-Appellant.

Nos. 04-1385 & 05-1027
(D.C. No. 03-cv-1400-REB-MJW)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **KELLY** and **BRISCOE**, Circuit Judges, and **JOHNSON**, District Judge[**]

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, ordered submitted without oral argument.

Defendant Alan Crespin, an attorney appearing pro se, appeals a jury

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable William P. Johnson, District Court Judge, United States District Court for the District of New Mexico, sitting by designation.

verdict which found him liable to plaintiff DIRECTV, Inc. (DTV) for unlawfully receiving satellite transmissions and using them for his own benefit or for the benefit of another in violation of 47 U.S.C. § 605(a). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

I.

DTV is a direct broadcast satellite system, offering television programming to residential and business customers on a subscription and pay-per-view basis. A typical DTV system consists of a small DTV satellite dish positioned outside a customer's home or business, a DTV receiver located inside the customer's home or business, and a DTV access card, which is programmed to allow a customer to access only those channels included in his or her subscription. DTV encrypts its transmissions to prevent unauthorized access to its programming. Despite its efforts to prevent interception, various pirate access devices have been developed that allow users to receive and unscramble DTV programming without a paid subscription. This case arises as part of a litigation campaign undertaken by DTV to deter the illegal interception of its encrypted satellite broadcasts.

Crespin became a DTV subscriber in 1996, and between 1998 and 2000, increased his subscription to include a large number of cable channels, the premium movie network STARZ, various sports networks and regional sports programs, and special sports programming packages covering most, if not all, professional baseball, football, and basketball games. DTV became aware that in

March and April 2001, Crespin received pirate access equipment from a shipping company, Fulfillment Plus. DTV had obtained, in related litigation, business records of Fulfillment Plus which revealed the shipment of pirate access devices to Crespin. At approximately the same time Fulfillment Plus shipped the equipment, Crespin downgraded his DTV subscription.

On May 22, 2003, DTV filed the present action against Crespin and nine unrelated defendants, alleging violations of the Federal Communications Act of 1934, 47 U.S.C. § 605(a), and the Electronic Communications Privacy Act, i.e., federal wiretap laws, 18 U.S.C. § 2511(1)(a) and § 2512(1)(b).[1] DTV also asserted a state law claim under Colo. Rev. Stat. § 18-4-701(2)(a) for theft of cable television service.

On June 24, 2004, the district court dismissed the state law claim against Crespin for failure to state a claim on which relief can be granted. The parties proceeded to trial on the remaining three claims. During trial, DTV voluntarily dismissed with prejudice its claim under 18 U.S.C. § 2512(1)(b), possession of pirate access devices. After a four-day trial, a jury returned a verdict for DTV on its claim under 47 U.S.C. § 605(a), but against DTV on its 18 U.S.C. § 2511(1)(a)

---

[1] Before trial, the district court determined that the parties had been misjoined and ordered that each of the defendants be made a defendant in separate, newly-filed lawsuits. Pursuant to this order, Crespin became a defendant in a new case, although DTV did not file an amended complaint against him.

claim. Based on DTV's success on the § 605(a) claim, the court awarded DTV statutory damages in the amount of $10,000, the maximum allowable under 47 U.S.C. § 605(e)(3)(C)(i)(II), plus DTV's costs and reasonable attorney fees.

## II.

Crespin raises sixteen issues on appeal. In the argument section of his brief, he breaks these issues into thirty-four subsections, each of which purports to raise a distinct issue for our consideration. In response, DTV organizes Crespin's arguments into three general categories, based on the appropriate standard of review for each category. Instead of adopting fully either party's organizational scheme, we believe the issues in this case fall generally under the following headings: jurisdiction/standing; statute of limitations; jury instructions; clarifying instruction; sufficiency of the evidence; the Fifth Amendment; inconsistent verdicts; improper influence on the jury; attorney fees; and miscellaneous arguments.

### A. Jurisdiction/Standing

Crespin's jurisdiction and standing arguments substantially overlap with each other. He contends that the district court lacked jurisdiction – and DTV lacked statutory standing – because the plain language of 47 U.S.C. § 605(a) does not apply to him as a DTV subscriber. The statute specifically provides:

> *No person not being authorized by the sender* shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted

communication to any person. *No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.*

(emphases added). The statute accords a right to sue to "[a]ny person aggrieved by any violation of subsection (a) . . . in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 605(e)(3)(A). Crespin argues that he was authorized by DTV, as a DTV subscriber, to receive all of DTV's transmissions, including the allegedly illegally received transmissions. In the absence of proof that he was *unauthorized* to receive DTV's transmissions, Crespin claims that the district court had no jurisdiction over him and that DTV is not a "person aggrieved" under the statute. Aplt. Opening Br. at 23-24, 28-29.

We review both the jurisdictional and standing issues de novo. In re Special Grand Jury 89-2, 450 F.3d 1159, 1169 (10th Cir. 2006). Crespin's argument assumes that all DTV subscribers have access to *all* of DTV's programming, such that being a DTV subscriber authorizes a person to view all of DTV's channels. Yet DTV presented evidence at trial showing that a DTV subscriber can only access those channels he has selected and for which he has paid the applicable fee. While Crespin is correct that DTV subscribers may receive, in an *encrypted* form, all of the channels that DTV offers, DTV programs its access cards to decode and make available only those channels for which subscribers have paid.

DTV then introduced evidence demonstrating that, although Crespin was a DTV subscriber, he canceled his subscription to a number of channels in early 2001. Consequently, Crespin was not authorized to view those canceled channels in decoded form because he was not subscribing to those channels – even though he subscribed to other DTV programming. Therefore, the fact that Crespin subscribed to some, but not all, of DTV's channels does not shield him – either due to lack of jurisdiction or lack of statutory standing – from the statute's prohibition against receiving unauthorized transmissions from DTV.

In a related argument, Crespin contends that DTV has no standing to sue because DTV suffered no "actual injury," or in other words, because Crespin did not actually receive or intercept any DTV communications. Aplt. Opening Br. at 28. Crespin contends that proof of such actual interception is a requirement for DTV to assert standing. Id. His argument alternates between asserting a lack of statutory standing – that DTV is not a "person aggrieved" under the statute – and Article III standing, which requires an injury in fact.

Examining statutory standing first, § 605(e)(3)(A) contains no actual interception requirement. That provision states: "*Any person aggrieved* by any violation of subsection (a) or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction." (emphasis added). The statute defines "any person aggrieved" to "include any person with proprietary rights in the intercepted communication by

wire or radio, including wholesale or retail distributors of satellite cable programming. . . ." 47 U.S.C. § 605(d)(6). Because the statute makes no reference to interception in its definition of standing, no actual "interception is required for DTV to qualify as 'any person aggrieved' in order to bring a civil action under the terms of § 605(e)(3)(A)." DIRECTV Inc. v. Minor, 420 F.3d 546, 550 (5th Cir. 2005). While DTV may have to prove receipt of communications as an element of its right to recovery, it is not necessary to establish standing under the statute.

Similarly, as a part of Crespin's argument on Article III standing, he contends that DTV has not proven interception of unauthorized transmissions. According to Crespin, if he has not intercepted such transmissions, then DTV has suffered no legally cognizable injury. In essence, this argument challenges the sufficiency of the evidence that DTV produced against him at trial, not DTV's standing to sue. Similarly, Crespin contends that the district court did not have jurisdiction because DTV did not allege or prove that he received an interstate or foreign communication by radio, which he argues is required under the statute. Because this argument is intertwined with his challenges to the jury instructions, we will discuss his argument in that section.

Crespin also contends that § 605(d)(6)'s definition of "person aggrieved" is limited to "wholesale or retail distributors of satellite cable programming." Crespin alleges that DTV is a "direct-to-home satellite" service provider, not a

satellite cable programmer, and is therefore ineligible to sue as a "person aggrieved" under the statute. Aplt. Opening Br. at 34-35.[2]

Crespin has cited no legal authority for his contention that the statute applies only to wholesale or retail distributors of satellite cable programming, and the plain language of the statute points to a contrary conclusion. For Crespin to be correct, the phrase "include" in § 605(d)(6) must mean "be limited to." Yet "include" is defined as "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." WEBSTER'S THIRD NEW INT'L DICTIONARY, 1143 (1993). The Supreme Court has noted that the term "including" "is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." Fed. Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 100 (1941) (citations omitted). Nothing in § 605(d)(6) indicates that Congress intended to depart from the normal use of "include" as introducing an illustrative – and non-exclusive – list of entities entitled to sue. We find further support for this interpretation in the cases from our sister circuits. See DIRECTV Inc. v. Budden, 420 F.3d 521, 527-28 (5th Cir. 2005) (rejecting the argument that § 605(d)(6) applies only to satellite cable programming and not to direct-to-home satellite services because "the word 'includes' is usually a term

---

[2] Crespin distinguishes the two types of providers by defining a direct-to-home satellite service as one that is primarily intended for direct receipt by subscribers, while "satellite cable programming" applies to satellite signals sent to cable operators. Aplt. Opening Br. at 32-33.

of enlargement, and not of limitation") (citation omitted); <u>Nat'l Satellite Sports, Inc. v. Eliadis, Inc.</u>, 253 F.3d 900, 913 (6th Cir. 2001) ("But this explicit reference to a subset of persons aggrieved was not intended to exclude others who sustain injuries from a violation of any of the prohibitions originally listed in § 605(a).").

## B. *Statute of Limitations*

Before reaching the merits of Crespin's statute of limitations argument, we first address whether Crespin preserved the issue for our review by raising it first with the district court. <u>See</u> <u>Cummings v. Norton</u>, 393 F.3d 1186, 1190 (10th Cir. 2005) (stating "the general rule that issues not raised below are waived on appeal"). As he did below, Crespin argues on appeal that the statute of limitations bars DTV's action against him. As regards the general assertion, it appears Crespin preserved a statute of limitations argument. Yet a comparison of Crespin's arguments before the district court with his arguments on appeal reveals that the issue now asserted is not properly before us.

Crespin raised generally an affirmative defense of statue of limitations in his answer. Aplt. Combined App. at 41. In a summary judgment motion filed on April 15, 2004, Crespin argued that DTV's § 605(a) claim was barred because the closest analogous federal law to § 605 (which he contended was 18 U.S.C. § 2520) set a two-year limitations period; Crespin identified April 30, 2001, as the latest date from which the statute began to run and noted that DTV did not file

suit until May 22, 2003, more than two years later. Id. at 168, 195. The district court denied Crespin's motion for summary judgment, but did not address Crespin's statute of limitations argument with any detail.

In his opening brief on appeal, Crespin shifts his statute of limitations argument, contending that the district court should have adopted *Colorado's one-year* statute of limitations and that the statute began to run on *May 25*, 2001 – "the date when [DTV] first had a reasonable opportunity to discover it had any alleged basis for this claim against" Crespin. Aplt. Opening Br. at 35-37. As DTV did not file suit until May 22, 2003, Crespin argues that it failed to pursue its claims against him within the statute's one-year period. In his reply brief, Crespin, for the first time, argues that even if a two-year statute of limitations under Colorado law applies, DTV's claim is time-barred. Aplt. Reply at 14-15. Crespin contends that the district court, on July 17, 2003, dismissed DTV's original suit against Crespin, based on a finding that DTV's joinder of multiple non-related defendants was improper. Crespin asserts that such a dismissal without prejudice does not toll the statute of limitations, and that when DTV refiled its suit on July 29, 2003, the two-year limitations period had expired.

The fact that Crespin has altered his statute of limitations argument at almost every opportunity calls into question whether Crespin has adequately preserved the issue for appeal. In Lyons v. Jefferson Bank & Trust, 994 F.2d 716 (10th Cir. 1993), we addressed the specificity required in the district court in

order to preserve an issue for appeal:

> In short, there are many ways in which a case may present . . . "issues not passed upon below." One is a bald-faced new issue. Another is a situation where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial. A third is a theory that was discussed in a vague and ambiguous way. A fourth is issues that were raised and then abandoned pre-trial. A fifth is an issue raised for the first time in an untimely motion. These are all different aspects of the same principle that issues not passed upon below will not be considered on appeal.

Id. at 722.

In this case, while Crespin previously raised a statute of limitations argument, that argument was substantially different from the one he offers on appeal. Specifically, he no longer argues that the court should borrow the statute of limitations from a closely analogous *federal* law – as he did before the district court – and instead argues a closely analogous *state* law statute of limitations applies. The two statutes of limitations have different lengths: *two* years under the federal law and *one* year under the state law. Further, Crespin now believes that the statute began to run on May 25, 2001, even though he argued to the district court that the statute began to run on April 30, 2001. These differences do not even take into account the transformation of Crespin's argument from his opening to his reply brief, wherein he now adds to the mix an argument concerning misjoinder.

Although these arguments all fall under "the same general category" of a statute of limitations defense, Crespin's arguments are so different from one brief

to the next that, were we to consider the statute of limitations issue that Crespin outlines in his appellate briefs, we would not be considering the same arguments that Crespin raised before the district court. We therefore conclude that Crespin has waived his statute of limitations arguments.

## C. Jury Instructions

As with Crespin's argument on the statute of limitations, we first examine whether Crespin preserved his numerous objections to the jury instructions "by objecting at the district court level to the instruction[s] on the same grounds raised on appeal." Comcoa, Inc. v. NEC Telephones, Inc., 931 F.2d 655, 660 (10th Cir. 1991) (citations omitted). Federal Rule of Civil Procedure 51(c)(1) requires a party to object to an error in an instruction, "stating distinctly the matter objected to and the grounds of the objection." Further, before we consider whether an instruction is erroneous, our rules require appellants to "cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on . . . the giving of or refusal to give a particular jury instruction[.]" 10th Cir. R. 28.2(C)(3)(b); see also 10th Cir. R. 28.2(C)(2) (requiring parties to identify where issues on appeal were raised and ruled upon).

Crespin's opening brief fails to comply with these rules. His brief does not cite to the points in the record where his objections regarding jury instructions can be found. Our own review of the trial transcript also fails to reveal any objection by Crespin, before the jury was instructed, regarding the jury

instructions he now challenges. Trial Tr., Vol. II at 375-89. In fact, when the district court specifically asked whether the parties had any objections to the proposed jury instructions that Crespin challenges on appeal, Crespin raised none. Id. at 377-79. While Crespin argues in his reply brief that DTV was incorrect in stating that the parties jointly submitted the jury instructions, he still does not cite to any part of the record containing his objections. Because the record does not indicate that Crespin objected in a timely manner to the specific jury instructions he now challenges, we review the jury instructions for plain error. See Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1227 (10th Cir. 2001) (citation omitted). Under a plain error standard of review, "we will only reverse . . . in an exceptional circumstance – one where the error was patently plainly erroneous and prejudicial," and where "fundamental injustice would otherwise occur." Id. (citations and internal quotation marks omitted) (ellipses in original).

1.    *Definition of Intercept*

Crespin contends that the jury instructions incorrectly defined the term "intercept." Aplt. Opening Br. at 57-59. In Jury Instruction No. 16, the district court defined "intercept," "interception," "intercepted," and "intercepting" to mean "that [DTV's] satellite transmissions were received and decoded without authorization by [DTV]." Aplt. App. at 161. Without elaboration, Crespin argues that this definition relieved DTV of its burden to prove the first, third, fourth, and fifth elements of DTV's § 605(a) claim, by "tak[ing] away from the jury its fact

-13-

finding responsibility to determine the ultimate issue in this case whether [DTV]'s satellite transmissions *were received without authorization*."[3]  Aplt. Opening Br. at 24-25, 58 (emphasis added).  Yet Instruction No. 16's definition of intercept clearly left it to *the jury* to find whether Crespin "received" DTV's satellite transmissions "without authorization."  Aplt. App. at 161.

Crespin further argues that the court should have applied the "plain meaning" of intercept, which Webster's New Collegiate Dictionary defines as "to stop, seize, or interrupt in progress or course or before arrival."  Aplt. Opening Br. at 58.  Crespin gives no reason why this definition is better than the one the district court used.  While the district court did not adopt the general dictionary definition of "intercept," the jury instructions tailored the definition to the facts of this case, which involved the receipt and decoding of satellite transmissions.  Given the district court's considerable discretion in formulating jury instructions, see Richards v. Attorneys' Title Guar. Fund, Inc., 866 F.2d 1570, 1573 (10th Cir. 1989), and Crespin's failure to identify the error in the jury instructions, Crespin has failed to show he suffered a fundamental injustice as a result of the

---

[3] Those elements are: "1) That the defendant 'intercepted' and/or assisted others in 'intercepting' [DTV's] satellite transmissions of television programming; . . . and 3) That [DTV] did not authorize the defendant to 'intercept' its satellite transmissions; and 4) That the defendant used the 'intercepted' transmissions for his own benefit, or for the benefit of another not entitled to receive the 'intercepted' satellite transmissions; and 5) That [DTV] was a 'person aggrieved' by the defendant's unauthorized 'interception' of its transmissions."  Aplt. App. at 159.

instruction.

Finally, Crespin reasserts his argument that he was a paid subscriber, and as such, could not "intercept" DTV's satellite transmissions. Aplt. Opening Br. at 25. For the same reasons we gave when addressing this argument above, Crespin's argument that a paid subscriber cannot be liable under § 605 fails as a matter of law. While DTV subscribers like Crespin may receive, in an encrypted form, all of the channels that DTV offers, DTV programs its access cards to decode and make available only those channels for which subscribers have paid. Thus, even paid subscribers, like Crespin, are capable of "intercepting" DTV's satellite transmissions in violation of § 605.

*2.     Definition of Person Aggrieved*

Section 605(d)(6) defines "any person aggrieved" as including "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of *satellite cable programming. . . .*" (emphasis added). Jury Instruction No. 16 defined "person aggrieved" as including "any person with proprietary rights in the intercepted communication, including wholesale or retail distributors of *encrypted satellite programming.*" Aplt. App. at 162 (emphasis added). Crespin argues that the district court erred in defining "person aggrieved" by substituting the phrase "encrypted satellite programming" for "satellite cable programming" in the definition. Aplt. Opening Br. at 30-31. As he argues concerning statutory standing, Crespin contends that §

605(d)(6) limited persons aggrieved to wholesale or retail distributors of *satellite cable programming*, leaving wholesale or retail distributors of *encrypted satellite programming* outside the scope of § 605(d)(6). For the reasons we outlined in Part II-A, we reject Crespin's interpretation of the statute.

*3.      Knowledge Requirement*

Crespin contends that the district court erred in failing to require DTV to prove that Crespin *knew* that DTV's transmissions had been intercepted, because Crespin argues that § 605(a) requires a "knowing" mental state.

Section 605(a) lists several prohibited practices:

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) *knowing that such communication was intercepted*, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

(emphasis added).  Crespin focuses on the above quotation's third sentence and its requirement that a person *know* that such communication was intercepted.  He also (correctly) points out that the district court did not instruct the jury that

-16-

Crespin had to know that such communication was intercepted.

This omission from the instructions was not erroneous, however, because DTV did not seek relief under the third sentence, which contains the knowledge requirement. Instead, DTV sought relief under the second sentence, which contains no knowledge requirement. See Aplt. Combined App. at 30 (alleging under its § 605(a) claim that Crespin "received and/or assisted others in receiving [DTV's] satellite transmissions of television programming without authorization . . . ."); see also Appellee Br. at 42.

*4. Interstate or Foreign Communication by Radio*

Crespin also contends that the district court erred in failing to instruct the jury that it must find that he received or assisted "in receiving any interstate or foreign communication by radio. . . ." Aplt. Opening Br. at 54-55. Instead, under the first element of Jury Instruction No. 14, the district court required the jury to find "[t]hat the defendant 'intercepted' and/or assisted others in 'intercepting' [DTV]'s satellite transmissions of television programming . . . ." Aplt. App. at 159.

While Crespin is correct that the relevant sentence of § 605(a) specifically forbids unauthorized interception of "any interstate or foreign communication by radio," Crespin does not cite any authority that "interstate or foreign communication by radio" excludes satellite transmissions of television programming, like those transmitted by DTV. Existing authority on this issue

-17-

fails to support Crespin's argument; § 605 is designed to protect a broad array of communications, including television signal transmissions via satellite. See, e.g., TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001); DIRECTV, Inc. v. Schulien, 401 F. Supp. 2d 906, 912-13 (N.D. Ill. 2005); DIRECTV, Inc. v. VanderHoek, 302 F. Supp. 2d 814, 817 (W.D. Mich. 2004). We therefore cannot say that the district court committed plain error in using the term "satellite transmissions of television programming."

*5.    Definition of Encrypted*

Crespin contends the court erred in defining "encrypted." He argues that in the definition, the court made factual findings that DTV in fact encrypted its transmissions, and thus, ultimately relieved DTV of its burden to prove the second element of its § 605(a) claim – "[t]hat the transmissions received by the defendant were 'encrypted.'" Aplt. App. at 159.

Jury Instruction No. 16 defined the term "encrypted":

"Encrypted," as used in Jury Instruction Nos. 14 and 15, means that [DTV] transmitted its programming in a form in which the aural and visual characteristics (or both) were modified or altered for the purpose of preventing the unauthorized reception of such programming by persons who did not have authorized equipment.

Id. at 161. Crespin interprets this instruction as telling the jury that DTV encrypted its transmissions by stating that DTV "transmitted its programming in a form in which the aural and visual characteristics (or both) were modified or altered for the purpose of preventing the unauthorized reception of such

-18-

programming by persons who did not have authorized equipment."

Crespin misconstrues the district court's purpose in this instruction. The district court was not making a factual finding for the jury to adopt, but it was instead explaining what the term "encrypted" means. DTV still had the burden to prove that it modified its signals to prevent unauthorized reception of programming. Giving this instruction was not plain error.

## D. Clarifying Instruction

Crespin contests the district court's response to a note from the jury during its deliberations. Aplt. Opening Br. at 39. He contends that the court abused its discretion in instructing the jurors to reread the jury instructions and that the court should have answered "no" to the jury's question. Id. at 39-40. The jury asked: "If a defendant did receive the equipment and did intend to use it for [piracy], but was unable to do so, i.e. he never successfully intercepted the satellite signal, is he still in violation of the statutes?"[4] Aple. Supp. App. at 201. At the time, Crespin asked the district court to "definitively answer the question in the negative." Id. at 202. Refusing to give such an instruction, the district court explained: "In this case, if I answer the jury's question with a simple yes or no, I run the real, and I believe unreasonable risk of directing verdict in this case. And, at this time, in these circumstances, I'm [un]inclined to engage in such

---

[4] The transcript reports the bracketed word as "currency," but it seems more likely that this was a transcription error and that the intended word was "piracy."

unwarranted inference[s], and to usurp the prerogative of the trier of fact." Id. at 204. Instead, the district court gave the following instruction in response to the jury's note:

> Your question implicates the two jury instructions that state essential elements of [DTV's] two claims against the defendant. The essential elements of [DTV's] two claims are stated in Jury Instruction Numbers 14 and 15. Jury Instruction Number 16 contains the definitions of certain terms used in Jury Instruction Numbers 14 and 15. You must consider [DTV's] two claims separately.
>
> After considering all of the evidence, you must determine whether or not [DTV] has proven each of the essential elements of each claim by a preponderance of the evidence. In determining whether the essential elements of a claim have been proven by a preponderance of the evidence, you must apply the definitions contained in Jury Instruction No. 16.
>
> The foregoing response [sic] your question is not intended to replace any jury instruction. Jury Instructions Number[s] 14, 15, and 16 should be read and considered by you, together with all other jury instructions.

Id. at 204-05.

"When deciding whether a possible error in a jury instruction mandates reversal, we review the record as a whole to determine whether the instructions state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable." Woolard v. JLG Indus., 210 F.3d 1158, 1174 (10th Cir. 2000) (citation and internal quotation marks omitted). "When the adequacy of a jury instruction is challenged, we consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in

-20-

every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." Haberman v. Hartford Ins. Group, 443 F.3d 1257, 1274 (10th Cir. 2006) (citation and internal quotation marks omitted). We review for abuse of discretion the district court's decision to refuse to give a supplemental instruction. Allen v. Minnstar, Inc., 97 F.3d 1365, 1370 (10th Cir. 1996). However, "when a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Id. at 1372 (citation and internal quotation marks omitted).

Here, the district court expressed reasonable concern that any direct answer to the question might so influence the jury on the element of interception as to be tantamount to a directed verdict. Further, the jury instructions to which the district court referred adequately explained that "interception" was a required element to prove a violation of § 605(a); any answer that the district court might have given would have unnecessarily repeated that language.

Crespin argues that United States v. Salazar, 57 Fed. Appx. 800 (10th Cir. 2003) forbids district courts from referring a jury back to the previously given jury instructions. In fact, if anything, Salazar indicates the opposite. See id. at 803 (failing to detect plain error when the district court told the jury that "there well might not be 'anything that we can give you beyond what's already in the instructions'"). We conclude the district court did not err in its response to the jury's note.

-21-

*E. Sufficiency of the Evidence*

Crespin asserts numerous insufficiency of the evidence arguments throughout his opening brief. He contends that DTV produced no evidence that: 1) he received any signals without authorization; 2) he possessed the software necessary to unscramble DTV's signals; 3) the alleged devices were properly assembled and capable of unscrambling DTV's encrypted signals; 4) he used or viewed unauthorized programming; and 5) DTV encrypted its signals at all times relevant to the complaint. Aplt. Opening Br. at 37-38. He also states that his cancellation of programming is not evidence of piracy because DTV billed him for programming that he did not order. Id. at 64.

"Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir. 1999) (citation and internal quotation marks omitted). Under this standard, we view "the record evidence in the light most favorable to the prevailing party," id. (citation omitted), while being mindful that "'[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'" United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000) (quoting Kitchens v. Bryan County Nat'l Bank, 825 F.2d

248, 251 (10th Cir. 1987)).

DTV alleged that Crespin violated the following provision of § 605(a): "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." Under this provision, DTV had the burden to show that Crespin received unauthorized satellite transmissions, without DTV's authorization, and used such communication for his benefit or the benefit of another unauthorized person. See DIRECTV Inc. v. Robson, 420 F.3d 532, 537 (5th Cir. 2005); Snider Communications Corp. v. Cue Paging Corp., 840 F. Supp. 664, 670 (E.D. Ark. 1994).

Viewing the evidence in this case in the light most favorable to the prevailing party (DTV), we conclude that there was sufficient evidence to support the verdict against Crespin. DTV presented testimony that explained how a subscriber's access card – located inside the subscriber's residence – controls access to DTV's programming, allowing each subscriber to view only those channels for which he has paid the required fee. Trial Tr., Vol. I, at 93-94, 96. One of DTV's witnesses, Larry Rissler, explained that piracy involves a person's theft of DTV programming through a device that allows "unfettered access," without a subscription, to all of DTV's channels. Id. at 98. Rissler testified that pirates typically "restrict their subscription [to DTV] to a low level of payment."

-23-

Id. Michael Barr told the jury that a device called an "unlooper" can modify an access card to allow a pirate to view programming to which he has not subscribed. Id. at 213-14. DTV tied Crespin to various devices used in piracy, such as unloopers, through packing slips that indicated shipment of those devices to Crespin's address. Id. at 155-65, 207. DTV also introduced testimony that Crespin reduced his DTV subscription and that the reduction coincided with his receipt of this equipment, indicating that he was using the equipment to watch unauthorized programs. Id. at 153, 164; Trial Tr., Vol. II, at 264-65.

The main thrust of Crespin's argument is that DTV introduced no direct evidence identifying any specific unauthorized programs that he received. To require direct evidence of interception would pose an unreasonable hurdle for § 605(a) plaintiffs because the technology involved allows piracy to occur with minimal detectible traces. See Robson, 420 F.3d at 539 & n.33. Crespin offers no reason why a jury – or we – should ignore the circumstantial evidence of receipt and use in this case.[5]

_____

[5] Crespin also argues that DTV relied solely on his invocation, during discovery, of the Fifth Amendment to prove that he was liable. Aplt. Opening Br. at 43-45. At trial, the jury learned that Crespin had refused to respond to certain discovery requests because of the Fifth Amendment; Crespin contends that DTV relied solely on this refusal to show that he had violated § 605(a). While we address Crespin's Fifth Amendment issues in a separate section, it is sufficient to note here that the trial testimony we cite above clearly shows a substantial amount of evidence – independent of his exercise of the Fifth Amendment – that is sufficient to support the jury's verdict. See also Baxter v. Palmigiano, 425 U.S.

(continued...)

*F. Fifth Amendment*

During discovery, Crespin refused to answer certain interrogatories or comply with certain requests for production on the grounds that doing either might incriminate him. The interrogatories and requests for production generally related to Crespin's purchase, possession, and use of pirate access devices. Aplt. Combined App. at 135-40. Crespin asserted that responding to the discovery requests might expose him to criminal liability, presumably under the criminal penalties enumerated in § 605(e)(1)-(2).[6] After Crespin failed to comply with a magistrate judge's order to respond to the discovery requests, the district court prohibited Crespin "from introducing any evidence at trial in support of any claim that he did not purchase, receive, possess, or use the pirate access devices

---

[5](...continued)
308, 318 (1976) (describing "the prevailing rule" as holding "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

[6] Section 605(e) provides in part:

(1) Any person who willfully violates subsection (a) shall be fined not more than $ 2,000 or imprisoned for not more than 6 months, or both.

(2) Any person who violates subsection (a) willfully and for purposes of direct or indirect commercial advantage or private financial gain shall be fined not more than $ 50,000 or imprisoned for not more than 2 years, or both, for the first such conviction and shall be fined not more than $ 100,000 or imprisoned for not more than 5 years, or both, for any subsequent conviction.

described in the Complaint. . . ." Aple. Br., Attach. E at 7.

Crespin now contends that the court unjustly sanctioned him by precluding him from offering such evidence. Aplt. Opening Br. at 42-43. He contends that answers to the discovery requests would directly implicate him in a crime or would provide a link in a chain of evidence needed to convict him of a crime. Id. at 42. This error was compounded, he asserts, when the district court failed to sanction DTV for failing to provide "full and complete" responses to Crespin's discovery requests. Id. at 41.

We review the imposition of sanctions for abuse of discretion. Fed. Deposit Ins. Corp. v. Daily, 973 F.2d 1525, 1530 (10th Cir. 1992) (citation omitted). The determination of the correct sanction for a discovery violation is a fact-specific inquiry. Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992). A district court's discretion to choose a sanction is limited, however, "in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery." Id. (citation and internal quotation marks omitted). Federal Rule of Civil Procedure 37(b)(2)(B) authorizes as a sanction against a party who fails to obey a discovery order "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence. . . ." Sanctions may be appropriate where "a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process. . . ." United States v.

-26-

4003-4005 5th Ave., 55 F.3d 78, 84-85 (2d Cir. 1995) (citations omitted).

Even if we assume that the district court erred in sanctioning him for his refusal to respond to discovery requests, Crespin's claim still fails. Crespin fails to identify what evidence he would have presented had he been permitted to introduce evidence in support of a defense that he did not purchase, receive, possess, or use pirate access devices. Instead, he summarily avers that "[t]he sanctions affected the outcome of the trial resulting in the jury finding that [Crespin] violated 47 U.S.C. [§] 605(a)." Aplt. Opening Br. at 43.

In another related argument, Crespin contends that the district court should have similarly sanctioned DTV for failing to respond to *his* discovery requests. Id. at 45. In an order entered on February 9, 2004, the district court held that DTV had filed evasive and incomplete responses to Crespin's discovery requests and compelled DTV to respond more fully. Aple. Br., Attach. D at 4, 6.

We decline to address this issue because Crespin has inadequately briefed it. He fails to identify how DTV refused to comply with the February 9, 2004, order in a manner so similar to his non-compliance that it warrants similar punishment. He cites no authority or citations to the record to support his argument. Accordingly, we will not consider this issue on appeal. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (refusing to consider an issue when a party failed to submit argument, cite case law, or point to the portions of the record supporting his argument) (citing Fed. R. App. P. 38).

## G. Inconsistent Verdicts

Crespin contends the jury rendered inconsistent verdicts by finding a violation of § 605(a) but no violation of § 2511(1)(a). He argues that two common elements, unauthorized interception and intent, were the only disputed elements as to both statutes, yet the jury resolved the disputes in DTV's favor as to § 605(a) and in Crespin's favor as to § 2511(1)(a). Crespin asserts that only a judgment notwithstanding the verdict – finding no liability as to either statute – can reconcile the conflicting verdicts.

Crespin failed to object to the verdicts on the ground of inconsistency before the jury was discharged. Although Crespin maintains that he tried to lodge an objection with the district court, but that the district court prevented him from doing so by ordering that any objection be submitted later in writing, Crespin did not raise the matter at all until after the jury had been discharged. Trial Tr., Vol. IV, at 467. As the jury returned a general verdict, we review the consistency of the verdicts under a plain error standard. See Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1545 (10th Cir. 1993).

"Plain error exists only when verdicts are inconsistent on their face." Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 911 (10th Cir. 2004) (citation omitted). We have described our plain-error inconsistency test as follows:

> A verdict that resolves separate and distinct causes of action in favor of both parties is not inconsistent on its face. . . . In contrast, when several causes of action are identical and defended on the same

-28-

> ground, a verdict for the plaintiff on one cause of action and for the defendant on another is inconsistent.

Id. at 911-12 (citation and internal quotation marks omitted) (ellipsis in original). We have also explained that verdicts are inconsistent when a jury renders different verdicts on two different causes of action, even though the only contested elements were the same as to both causes of action. Id. at 912.

The verdicts are not inconsistent because at least one disputed element – intent – was not common to both causes of action. Unlike § 2511(1)(a), § 605(a) does not have an intent requirement. Compare 47 U.S.C. § 605(a), with 18 U.S.C. § 2511(1)(a). The jury instructions clearly set forth this distinction. See Aple. Supp. App. at 117-18. While Crespin at times characterizes DTV's case as hinging on the unauthorized interception element – which the jury instructions required the jury to find as to both causes of action – Crespin indicates that he also disputed § 2511(1)(a)'s intent requirement. See Aplt. Reply Br. at 22 ("[Crespin] has demonstrated inconsistent verdicts where both claims require an intentional state of mind."). There is nothing inconsistent in finding that Crespin received unauthorized transmissions for his own benefit but did not "deliberately and purposefully" (as intent was defined in the jury instructions) intercept unauthorized transmissions. Thus, the verdicts were not inconsistent.

*H. Improper Influence on the Jury*

Crespin contends the district court erred in failing to investigate his allegations of improper outside influence during the trial. Aplt. Opening Br. at 65-66. The alleged improper influence was a television news broadcast which aired on the first day of trial. Id. at 65. The broadcast allegedly contained statements by DTV's witnesses, Michael Barr and Larry Rissler, as well as exhibits Barr had presented and testified to earlier that day. Id.

We review the district court's response to allegations of juror bias for abuse of discretion. Skaggs v. Otis Elevator Co., 164 F.3d 511, 518 (10th Cir. 1998). Even if we assume that Crespin made a timely objection before the district court,[7] Crespin does not explain how the contents of the report would have biased the jury against him. In effect, Crespin asks us to presume that the jurors were exposed to the publicity and that such publicity prejudiced him, when we have rejected those same presumptions in the past. Welch v. United States, 371 F.2d 287, 291-92 (10th Cir. 1966) (citations omitted). Further, the district court

---

[7] Crespin first made note of the media report in his motion for a new trial after the jury's verdict. See Aple. Supp. App. at 83-84. We have warned parties not to withhold such objections until after a jury returns an adverse verdict. Mares v. United States, 383 F.2d 805, 808 (10th Cir. 1967). On appeal, Crespin contends that he first became aware of the news report after the trial had ended. Aplt. Opening Br. at 65. DTV questions the veracity of this statement based on a review of the news broadcast which shows Crespin looking directly at the camera as the report was filmed. Aple. Br. at 51 n. 23. We need not resolve when Crespin became aware of the report or its contents because his argument is meritless even if timely.

-30-

properly and repeatedly instructed the jury not to read or listen to news media during the trial.  See Trial Tr., Vol. I at 24-25, 64-65.  Crespin has provided no basis for us to conclude that these instructions were ineffective or ignored.

## I.  Attorney Fees

Crespin argues that the district court abused its discretion in awarding DTV attorney fees because he was successful on three of the four claims, an award of attorney fees would compensate DTV for "research that will be used in other [DTV] cases," and DTV "had access to data [from other cases] which would reduce costs."  Aplt. Opening Br. at 66.  His first argument does not acknowledge that an award of attorney fees for a violation of § 605(a) is mandatory: "The court . . . *shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added); see also Burdulis, 460 F.3d at 170 n.2.  As for his second argument, Crespin's speculation that DTV may use research from this case in other cases is irrelevant because the statute commands an award of reasonable fees to a prevailing aggrieved party.  Finally, Crespin fails to identify what data from which cases would have reduced costs.  We therefore affirm the award of attorney fees.

## J.  Miscellaneous Arguments

Crespin, in a one sentence argument, contends that DTV failed to establish that it "has a lawfully established market system" because DTV failed to show

that its "access card" has been "certified" by the Federal Communications Commission. Aplt. Opening Br. at 35. Crespin does not expand on this statement, cite relevant case law, or point to any part of the record that supports this argument. In the absence of an adequate argument, we will not address this issue. See Gross, 53 F.3d at 1547.

In the "Statement of the Case" and "Judgment Fraudulently Procured" sections of his brief, Crespin lists a variety of alleged facts that purportedly show that DTV committed fraud and misrepresentation. Crespin fails to assert these facts in his argument section and fails to tie these facts to any case law or reasoned argument counseling a reversal. We will therefore not address them. See id.

Later in his brief, Crespin also argues that the district court should have dismissed DTV's § 605(a) claim when DTV voluntarily dismissed its § 2512(1)(B) claim, possession of a pirate access device. Aplt. Opening Br. at 46-49. He essentially restates his prior arguments that DTV did not present any evidence that Crespin actually received or viewed unauthorized programming. For the reasons stated above, we again conclude this argument is meritless.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court. We also GRANT DTV's motion to file a surreply and to file a second supplemental appendix and GRANT Crespin's motion to file a supplemental

-32-

appendix.

                            Entered for the Court


                            Mary Beck Briscoe
                            Circuit Judge