**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 29 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TONY BARTEE,

      Plaintiff - Appellant/
Cross - Appellee,

      v.

MICHELIN NORTH AMERICA,
INC., a New York corporation,

      Defendant - Appellee/
Cross - Appellant.

Nos. 03-6071 & 03-6086

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CIV-01-438-T)**

---

Andrew W. Lester (Shannon F. Davies and R. Scott Thompson, with him on the briefs), Lester, Loving & Davies, P.C., Edmond, Oklahoma, appearing for Plaintiff-Appellant/Cross-Appellee.

Victor Fred Albert (Toni J. Ellington, with him on the briefs), McKinney & Stringer, P.C., Oklahoma City, Oklahoma, appearing for Defendant-Appellee/Cross-Appellant.

---

Before **TACHA**, Chief Circuit Judge, **McKAY,** and **TYMKOVICH**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Defendant-Appellee Michelin North America ("Michelin") terminated Plaintiff-Appellant Tony Bartee from his job as a foreman at its Ardmore, Oklahoma factory. After his termination, Mr. Bartee brought suit pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging that Michelin failed to reasonably accommodate his disability and that it wrongfully terminated his employment. On appeal, Mr. Bartee challenges the District Court's back-pay award and its order barring a punitive-damages instruction. On cross-appeal, Michelin contests the District Court's failure to grant it judgment as a matter of law. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, AFFIRM in part, REVERSE in part, and REMAND for a new determination of damages.

## I. BACKGROUND

Mr. Bartee worked as a foreman at the Michelin factory in Ardmore. This position required Mr. Bartee to move about the sizeable plant to oversee his employees. In 1995, Mr. Bartee was diagnosed with avascular necrosis in both of his hips, which required two surgeries. Post-traumatic arthritis in his right ankle, which resulted from a previous car accident, also made walking and prolonged sitting increasingly painful.

Mr. Bartee asked Michelin to provide him a four-wheeled golf cart to lessen the strain of his daily movement in the plant. Michelin denied this request,

instead providing him with a smaller three-wheeled cart. The size of this cart caused Mr. Bartee, a 6'4" man, significant discomfort and aggravated his hip condition. Faced with increasing pain, Mr. Bartee took short-term disability leave on June 4, 1998, which became long-term disability leave on December 3, 1998.

Michelin's employment policy requires it to terminate all employees who fail to return to work within twelve months of taking disability leave. Mr. Bartee contacted Michelin on May 3, 1999, after almost eleven months on leave, requesting that Michelin accommodate his condition or reassign him to a job that he could physically perform. In response, Michelin offered Mr. Bartee a job in the planning division. This job required the employee to work occasional twelve-hour shifts with substantial walking and standing and paid $20,000 less than the foreman position. Michelin also denied Mr. Bartee's request for use of a four-wheeled golf cart in this position, stating only that the three-wheeled cart should still be available. Given the physical requirements of the planning position and the lack of a suitable cart, Mr. Bartee's doctor advised him against taking the job. Mr. Bartee followed this advice and refused the position. Michelin offered him no other jobs and terminated him after his twelve months of disability leave expired.

Mr. Bartee's suit presented two theories of recovery pursuant to the ADA: (1) failure to provide a reasonable accommodation, and (2) wrongful termination.

The jury returned a verdict in favor of Mr. Bartee on the reasonable-accommodation theory but against him on the wrongful-termination one. Neither party filed a timely motion for inconsistent verdicts. In its opposition to Mr. Bartee's request for front and back pay, however, Michelin contested the consistency of the verdicts. The District Court, employing plain error review, denied Michelin's request.

Although the District Court found the verdicts consistent, it refused to award Mr. Bartee back pay to the date of judgment in light of the jury's rejection of his wrongful termination claim. Instead, the District Court limited damages to the time between Mr. Bartee's letter requesting reasonable accommodation and the lawful discharge, ultimately awarding him $3,241.50. Mr. Bartee filed a timely notice of appeal, and Michelin cross-appealed.

Mr. Bartee raises three points for review. First, he argues that the District Court erred in awarding him only one month's back pay. Second, he asserts that the District Court should have instructed the jury on punitive damages. Third, if we do not reverse the District Court's back-pay ruling, he requests a new trial.

Michelin also brings three arguments on cross-appeal. First, Michelin urges that Mr. Bartee presented insufficient evidence that he is a "qualified individual with a disability" under the ADA. Second, Michelin contends that Mr. Bartee offered insufficient evidence of its failure to engage in a good-faith

attempt to accommodate him.  Third, in the alternative, Michelin challenges the District Court's exclusion of evidence of Mr. Bartee's post-June 1999 medical condition.  We examine these issues in turn.

## II.  BACK PAY & FRONT PAY

A.      Standard of Review

A district court's decision to award back or front pay under the ADA is an equitable one.  *See* 42 U.S.C. § 2000e-5(g)(1) (Relief "may include . . . back pay . . . or any other equitable relief as the court deems appropriate[.]"); *McCue v. Kansas*, 165 F.3d 784, 791-92 (10th Cir. 1999) (interpreting back and front pay to be equitable remedies under § 2000e-5(g)(1) in a Title VII case).  As an equitable consideration, "a district court has broad discretion in fashioning relief to achieve the broad purpose of eliminating the effects of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination." *Dilley v. SuperValu, Inc.*, 296 F.3d 958, 967 (10th Cir. 2002) (quotations and alterations omitted).

We review a district court's determination of front and back pay for abuse of discretion.  *Davoll v. Webb*, 194 F.3d 1116, 1143 (10th Cir. 1999).  "Under the law of this circuit, judicial action which is arbitrary, capricious, or whimsical . . . . [or a] ruling based on an erroneous view of the law or on a clearly erroneous assessment of the evidence . . . constitute[s] an abuse of discretion." *Amoco Oil*

*Co. v. EPA*, 231 F.3d 694, 697 (10th Cir. 2000) (citations and quotations omitted). "That the court's discretion is equitable in nature, hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975) (citations omitted). Indeed, when affording remedies under the ADA, "[a] court must exercise this [equitable] power in light of the large objectives of the Act." *Id.*

B.      Merits

Mr. Bartee argues that the District Court erred by limiting the damages for his reasonable-accommodation claim to his lost pay, minus his disability insurance payments, from the time that Michelin failed to accommodate him on May 3, 1999, to his termination on June 3, 1999. Finding that the District Court failed to establish a sufficient factual basis for its equitable award, we reverse and remand for a calculation of back- and front-pay damages consistent with this opinion.

1.      *Consistency of the Verdicts*

First, like the District Court, we must interpret whether the verdicts are consistent. Here, neither party timely asserted inconsistent verdicts. "A failure to object to general jury verdicts on the ground of inconsistency before the jury is discharged constitutes waiver, unless the verdict is inconsistent on its face such

that the entry of judgment upon the verdict is plain error."[1]  *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993).  Plain error exists only when verdicts are inconsistent on their face.[2]  *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1424 (10th Cir. 1986).

In *Diamond Shamrock*, we formulated the plain-error inconsistency test as follows:

> A verdict that resolves separate and distinct causes of action in favor of both parties is not inconsistent on its face. . . . In contrast, when several causes of action are identical and defended on the same ground, a verdict for the plaintiff on one cause of action and for the defendant on another is inconsistent.  *Id.* at 1424-25.

In *Oja v. Howmedica, Inc.*, 111 F.3d 782 (10th Cir. 1997), however, we interpreted this standard to find a verdict for plaintiff in negligence and for defendant in strict liability inconsistent on its face.  We found this inconsistency, despite the facial differences between these causes of action, because the only two

---

[1] The jury received one verdict form, identifying failure to reasonably accommodate and wrongful discharge as separate claims and instructing the jury to proceed directly to damages if it found for Mr. Bartee on either claim.  Such verdict forms are best construed as general verdicts.  *See Resolution Trust*, 998 F.2d at 1545-47.

[2] As this suggests, we do not conduct plain error review here under the same plain error standard used in other contexts.  *See, e.g., United States v. Lang*, 364 F.3d 1210, 1217 (10th Cir. 2004) (applying plain error in the context of Fed. R. Crim. P. 52(b)); *Maestas v. Lujan*, 351 F.3d 1001, 1011 (10th Cir. 2003) (applying plain error in the context of civil jury instructions); *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1409 (10th Cir. 1991) (applying plain error under Fed. R. Evid. 103(d)).

elements contested at trial, product defectiveness and injury causation, "were common to all of Oja's claims." *Id.* at 791.

We note that some tension may exist between these two formulations; however, we need not resolve any possible tension today because the verdicts here are facially consistent under either standard.[3] First, noting that the third elements differ for the claims of wrongful termination and failure to accommodate under the ADA,[4] they appear to present separate and distinct causes of action. *See Diamond Shamrock*, 791 F.2d at 1424.[5] Second, both parties vigorously contested

_____

[3] Although we do not decide today, we note that the following unitary standard seems to reconcile and capture the essence of both formulations: verdicts are only inconsistent on their face where the jury ruled for different parties on two or more claims and the sole elements disputed at trial were common to all causes of action.

[4] To present a claim of wrongful termination, Mr. Bartee must show: (1) he is disabled within the meaning of the ADA; (2) he can perform, either with or without reasonable accommodation, the essential functions of the desired job; and (3) "that [Michelin] terminated him because of his disability." *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995). To present a prima facie failure to accommodate claim, the first two elements remain the same, while the third is met by showing that "an employer [did not] take reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in the fairly immediate future." *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1252 (10th Cir. 2004).

[5] We assume, without definitively deciding, that wrongful termination and failure to reasonably accommodate claims under the ADA are separate causes of action. The District Court and the parties proceeded as if they were, and neither party objected to that assumption on appeal. Furthermore, at least one court of appeal appears to treat them as distinct causes of action. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997). On the other hand, both theories of

(continued...)

the third elements of the reasonable accommodation and the wrongful termination claims.[6]  Hence, the verdicts are consistent under plain error review because the disputed elements were not common to both causes of action and the jury could have logically reached opposite conclusions on those elements.  *See Oja*, 111 F.3d at 790-91.

>    2.    *Factual Findings of the District Court*

Having found the verdicts consistent, we next evaluate the District Court's factual basis for limiting Mr. Bartee's back-pay award.  Pursuant to the Seventh Amendment to the Federal Constitution, in fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict.[7]  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.* 298 F.3d 955, 965-66 (10th Cir. 2002) (holding that the district court abused

---

[5](...continued)
recovery arise from the same statutory provision.  *See, e.g., Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir. 1997) (citing 42 U.S.C. § 12112(a) as basis for failure to accommodate claim); *Taylor v. Pepsi Cola Co.*, 196 F.3d 1106, 1107-09 (10th Cir. 1999) (citing 42 U.S.C. § 12112(a) as basis for wrongful termination claim).  Such cases could lend support to the view that they provide merely alternative methods of proving one statutory cause of action.

[6] For the former, the relevant issue was whether Michelin took reasonable steps to reassign Mr. Bartee to a vacant position.  For the wrongful termination claim, the pertinent question was whether Michelin terminated Mr. Bartee because of his disability.

[7] Unless otherwise indicated in this opinion, the term "findings of fact" refers both to findings implied by the district court from the jury verdicts and to the court's original findings.

its discretion in refusing front pay under an ADA and FMLA claim because it "disregarded the jury's implicit finding that [the plaintiff] would have been employed at least until the date of trial"). In other words, "the subsequent findings by the trial judge in deciding the equitable claims [cannot] conflict with the jury's [explicit and implicit] determinations." *AG Services of America, Inc. v. Nielsen*, 231 F.3d 726, 731 (10th Cir. 2000). Moreover, a district court must construe the implied factual findings from *both jury verdicts* in harmony before using them as the basis for its equitable relief. *Diamond Shamrock*, 791 F.2d at 1431 (McKay, J., concurring in part, dissenting in part). Finally, to facilitate appellate review, a district court must make clear on the record the findings of fact on which it relies. *Cf. United States v. Pelliere*, 57 F.3d 936, 940 (10th Cir. 1995) (noting that an appellate court cannot review findings of fact under U.S.S.G. § 3B1.1(b) unless the district court makes those findings on the record); *Heinold Hog Mkt., Inc. v. Superior Feeders, Inc.*, 623 F.2d 636, 637 (10th Cir. 1979) ("[T]he function of appellate review is to decide whether the correct rule of law was applied to the facts found[.]").

Here, although the District Court briefly addressed the matter,[8] the findings

---

[8] In full, the District Court concluded:

Had Plaintiff elected to proceed solely on the failure to accommodate claim, Plaintiff would have been in a position to argue he would have

(continued...)

are insufficient to enable us to evaluate whether the District Court abused its discretion by basing its equitable remedy on findings of fact that conflict with those implied by *both* jury verdicts.[9]  *See AG Servs.*, 231 F.3d at 731; *Smith*, 298 F.3d at 965-66.   Thus, we reverse and remand the award of equitable relief for specific findings of fact by the District Court and, if necessary, recalculation of equitable damages.  These findings of fact should include implied findings of fact from both jury verdicts—read in harmony—as well as any independent findings of fact necessary for determination of the proper equitable relief.

### III.  PUNITIVE DAMAGES

A. Standard of Review

Mr. Bartee appeals the District Court's order excluding the punitive damages issue from the jury.  "Whether sufficient evidence exists to support

---

[8](...continued)
been employed by Defendant until his retirement at age 65. However, Plaintiff elected to submit a claim for wrongful termination to the jury.  The jury, having heard all the evidence presented by both parties, determined that plaintiff's termination on June 3, 1999, was not discriminatory.

[9] To the extent that the District Court made written findings of fact, the Court appeared to focus exclusively on the jury's wrongful termination verdict and ignored the reasonable accommodation verdict.  Thus, even if we found this sparse factual analysis sufficient, its failure to interpret the implied factual findings from *both jury verdicts* in harmony would require us to reverse and remand for additional factual findings and, if necessary, the recalculation of the equitable relief.  *AG Servs.*, 231 F.3d at 731; *Diamond Shamrock*, 791 F.2d at 1431 (McKay, J., concurring in part and dissenting in part).

punitive damages is a question of law reviewed de novo." *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1244 (10th Cir. 1999) (quotations omitted).

## B. Merits

An ADA plaintiff may seek punitive damages if his employer acted with "malice or with reckless indifference to the plaintiff's federally protected rights." *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 535 (1999) (applying § 1981(a) in a Title VII case) (emphasis and alterations omitted); *see also Wal-Mart Stores, Inc.*, 187 F.3d at 1244 (applying *Kolstad* standard to an ADA case). To satisfy this standard, the employer must engage in the prohibited conduct with the "knowledge that it may be acting in violation of federal law, not [mere] awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535. Having extensively reviewed the record before us, we find no evidence that Michelin either (1) acted with malice or reckless indifference with respect to Mr. Bartee's federally protected rights, or (2) knew that it acted in violation of the ADA. Therefore, we affirm the decision of the District Court to prevent the jury from considering punitive damages against Michelin.[10]

## IV. SUFFICIENT EVIDENCE OF STATUS AS A QUALIFIED INDIVIDUAL

## A. Standard of Review

---

[10]Because we remand on the equitable damages issue, we need not address Mr. Bartee's request for a new trial as an alternative remedy.

-12-

In its cross-appeal, Michelin objects to the District Court's denial of its motions for judgment as a matter of law. We review this issue de novo, applying the same standard as the District Court. *Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1219 (10th Cir. 1999). Under this standard,

> [w]e must affirm if, viewing the record in the light most favorable to the non-movant, there is evidence upon which the jury could properly return a verdict for the non-movant. In conducting our review, we do not weigh the evidence, pass on the credibility of witnesses, or substitute our own conclusions for that of the jury. However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Id.* at 1219-20 (quotations, citations, and alterations omitted).

B. Merits

First, Michelin challenges the jury's determination that Mr. Bartee is a qualified individual with a disability under the ADA. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Michelin admits that Mr. Bartee is an individual with a disability. Mr. Bartee concedes that the planning position – the only job offered to him by Michelin – exceeded his physical capabilities by requiring extensive standing and walking with occasional twelve-hour shifts. Thus, the relevant issues for our

-13-

analysis are: (1) whether the jury could have found, based on the evidence presented at trial, that extensive standing and walking with occasional twelve-hour shifts are not essential functions of the planning position and (2) whether Mr. Bartee could have performed all essential functions of the job with reasonable accommodation. *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003) (citations omitted).

The term "essential function" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "Determining whether a particular function is essential is a factual inquiry." *Davidson*, 337 F.3d at 1191. In conducting this inquiry, the finder of fact must give consideration to the employer's judgment regarding the functions of a job that are essential, including those functions contained in a written job description. *See id.*; *see also* 42 U.S.C. § 12111(8). However, "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Davidson*, 337 F.3d at 1191 (quotation omitted).

Mr. Bartee produced sufficient evidence at trial for the jury to conclude that neither of these conditions are "essential functions or prerequisites" of the planning position. Plaintiff's Exhibit 36 includes Michelin's position description for the planning job. It lists the eight "major responsibilities of the [planning]

position." Neither extensive walking nor twelve-hour shifts appear in these primary requirements. In fact, Dr. Troop, Mr. Bartee's treating physician, having already stated that Mr. Bartee could not fulfill a position requiring twelve-hour days and extensive walking, testified that he considers Mr. Bartee qualified to perform all of the tasks required for the planning position.[7] Thus, sufficient evidence existed for the jury to find that the duration of planning shifts and the amount of walking required are not "essential functions or prerequisites" of the planning position.

As non-essential functions, the ADA required Michelin to reasonably accommodate Mr. Bartee regarding the use of a cart and the length of the workday. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112-13 (8th Cir. 1995) (citing 42 U.S.C. § 12111(9)(B)). Mr. Bartee presented evidence showing that he could have performed the movements required for the planning job if equipped with an average sized golf cart. Mr. Hill, the area personnel manager, testified that an employee could get almost anywhere in the Michelin plant by cart, although leaving the cart for short walks would be necessary to inspect equipment and interact with certain employees. Other Michelin employees testified that average-sized golf carts maneuvered and otherwise operated effectively throughout the plant. Dr. Troop stated that Mr. Bartee was physically capable of performing labor that consisted of sitting in a properly-sized cart with

intermittent standing and walking. In addition, Mr. Bartee testified that he could work effectively with a cart so long as it contained sufficient leg room to relieve the pressure on his hips and allow him to operate the foot controls.

The evidence also shows that Mr. Bartee could have worked an eight-hour day. According to Mr. Bartee and Dr. Troop's testimony, Mr. Bartee could work for at least eight hours per day if the job consisted primarily of sitting with occasional movement. Michelin further supported this conclusion by finding him sufficiently qualified to offer him the planning position after reading his May 1999 letter and medical report. Interpreting this evidence in the light most favorable to Mr. Bartee, we find that sufficient evidence existed for the jury to reasonably determine that Mr. Bartee was a qualified individual with a disability with respect to the planning position.

### V. SUFFICIENT EVIDENCE OF FAILURE TO ACCOMMODATE

A. Standard of Review

Michelin also challenges the jury's finding that it failed to reasonably accommodate Mr. Bartee. Michelin raised this issue in its motion for judgment as a matter of law. Thus, we review the District Court's order de novo, applying the same standard as the court below. *Roberts*, 183 F.3d at 1219.

B. Merits

Michelin had a duty under the ADA to allow Mr. Bartee to work in the

planning department if, through reasonable accommodations, he could fulfill the essential functions of the position. 42 U.S.C. § 12112(b)(5). To facilitate the reasonable accommodation, "[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties." *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quotation omitted); *see also* 29 C.F.R. § 1630.2(o)(3).

"[T]he interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Midland Brake*, 180 F.3d at 1171-72 (footnote omitted). After such notice—which the record illustrates occurred here through Mr. Bartee's May 3, 1999, letter—"both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company . . . ." *Id.* at 1172.

While "[t]he exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated[,]" *id*. at 1173, "[t]he interactive process [necessarily] includes good-faith communications between the employer and employee[,]" *id*. at 1172. As such, after receiving notice from Mr. Bartee, Michelin had a duty to engage

with him in a good faith effort to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* at 1171.

Mr. Bartee produced evidence at trial showing that Michelin failed to participate in such an interactive process. Reading the evidence in the light most favorable to Mr. Bartee, Michelin did not inquire about his restrictions or about the accommodations that he needed to perform the planning position.[11] Instead, Mr. Warner, Mr. Bartee's former area personnel manager, offered the planning job to Mr. Bartee without assessing any of its requirements. Michelin did not offer any position modifications to Mr. Bartee nor did it provide any evidence showing that shortening this position's work day to eight hours or acquiring a larger cart would disrupt essential functions of the job. In fact, the record does not indicate any accommodations offered to Mr. Bartee by Michelin other than the three-wheeled cart, which Mr. Bartee had already stated was too small for his use. The record, then, provides sufficient grounds for the jury to conclude that Michelin failed to reasonably accommodate Mr. Bartee. Thus, we affirm the

---

[11]At trial, Mr. Warner stated that he asked Mr. Bartee about his restrictions, although Mr. Bartee claimed otherwise. Mr. Warner did admit, however, that he made no inquiry into reasonable accommodations that Michelin could make for Mr. Bartee.

District Court's denial of Michelin's motions for judgement as a matter of law.[12]

## VI.  CONCLUSION

For the reasons provided above, we AFFIRM the District Court's refusal to submit punitive damages to the jury, AFFIRM the District Court's denial of Michelin's motion for judgement as a matter of law, REVERSE the calculation of damages, and REMAND for further findings of fact and a determination of equitable relief consistent with this opinion.

---

[12] Michelin also claims in its cross-appeal that the District Court erred in excluding from trial Mr. Bartee's medical records and other information regarding his health after June 3, 1999.  Michelin asks us to reverse this ruling only "if this Court affirms the district court's denial of Michelin's motions for judgment as a matter of law, and if this Court grants Bartee a new trial . . . ."  Because we do not grant Mr. Bartee's motion for a new trial, we need not address this issue.