**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 63**

Docket No. DA-0752-10-0223-E-1
EEOC Petition No. 0320110053

**Reynaldo Alvara,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

August 13, 2014

Gary M. Gilbert, Esquire, and Julie E. Rook, Esquire, Silver Spring,
Maryland, for the appellant.

Lamont D. Nahrgang, Esquire, and Peter Arcuri, El Paso, Texas, for
the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## OPINION AND CERTIFICATION ORDER

¶1    The Equal Employment Opportunity Commission (EEOC) has referred this
appeal of the appellant's removal to the Board for further consideration pursuant
to 5 U.S.C. § 7702(b)(5)(B) because the EEOC's decision differs from the
Board's decision in this case. For the following reasons, we conclude that, as a
matter of law, the EEOC's decision is based upon an incorrect interpretation of
civil service law, rule, or regulation. In the alternative, we find that the evidence
in the record does not support the EEOC decision and that the EEOC decision is

so unreasonable that it amounts to a violation of civil service law, rule, or regulation. Thus, the Board cannot agree with the EEOC's decision. We therefore REAFFIRM our prior decision. *See* 5 U.S.C. § 7702(c)(2); 5 C.F.R. § 1201.162(a)(2).

## BACKGROUND

¶2        The appellant, a GS-11 Customs and Border Protection Officer (CBPO), suffers from sleep apnea, a permanent condition which requires him to get 8 hours of sleep and which he claims precludes him from working the graveyard shift or performing substantial amounts of overtime, both essential functions of his position. Initial Appeal File (IAF), Tab 7b at 41, 80-88, 89-102. The agency informally accommodated him for some time, but, when a new Port Director was appointed, she began to examine the workload assignment situation, specifically, the number of CBPOs who, for a variety of reasons, were on light duty, and she found that the appellant could not perform the full range of his duties. In response to his request for accommodation, she found that not requiring him to work the graveyard shift and substantial overtime on a permanent basis was not a reasonable accommodation. *Id.* She directed the agency to undertake a search for other suitable positions within the appellant's commuting area that he could perform, but none were found. She offered to extend the search outside the commuting area, but the appellant declined. IAF, Tab 7a at 65, 41-42. Accordingly, she effected his removal for physical inability to perform. *Id.* at 39-41.

¶3        On appeal, the appellant alleged disability discrimination, arguing that the agency failed to reasonably accommodate his disability by not allowing him to work a stable schedule. *Id.*, Tab 1. The appellant's request for relief included, inter alia, a claim for compensatory damages. *Id.* at 2.

¶4        In her initial decision affirming the agency's action, the administrative judge sustained the charge. *Id.*, Tab 28, Initial Decision (ID) at 8-9. In

addressing the appellant's claim of disability discrimination, she found that he is disabled, ID at 10, but that he failed to establish that he is a "qualified individual with a disability" because he did not show that he can perform the essential functions of his position with or without accommodation, ID at 22. Finding that the accommodation he requested, not having to work rotational shifts and overtime, was a request to change the essential functions of his job, the administrative judge relied on *Bouffard v. Department of Homeland Security*, EEOC Appeal No. 0120065257, 2008 WL 276452 (E.E.O.C. Jan. 16, 2008) (the ability to work rotational shifts and overtime is an essential function of the CBPO position, and the accommodation of not having to work rotational shifts and overtime is in essence a request to change the essential function of the job which the agency is not required to do). ID at 22. The administrative judge found that no vacant position was available within the appellant's commuting area and that he had not agreed to the agency's offer of an expanded search. ID at 23. The administrative judge concluded that the appellant had failed to identify any reasonable accommodation that would have allowed him to continue working and that he therefore did not establish disability discrimination. ID at 23. She then found that the agency showed that its action promoted the efficiency of the service and that removal was a reasonable penalty for the sustained charge. ID at 24-25.

¶5      On petition for review, the appellant argued that the administrative judge erred in finding that the ability to work the graveyard shift and substantial overtime are essential functions of his position and that his inability to perform those tasks precluded him from being a qualified individual with a disability. Petition for Review File, Tab 5 at 13-29. The appellant also argued that the agency failed to establish that his requested accommodation would pose an undue hardship for the agency. *Id.* at 29-32.

¶6      The Board upheld the administrative judge's decision, finding that she properly determined that the appellant could not perform the essential functions

of a CBPO. *Alvara v. Department of Homeland Security*, [116 M.S.P.R. 627](), ¶¶ 7-13 (2011). The Board concurred with the EEOC's determination in *Bouffard* that the ability to work rotational shifts and overtime were essential functions of the job, and that, because the appellant could not perform those functions with or without accommodation, he did not establish that he is a qualified individual with a disability. *Id.*, ¶¶ 8-10. Based on this finding, the Board found it unnecessary to consider the next level of inquiry, namely, whether providing the appellant a modified work schedule would pose an undue hardship. *Id.*, ¶ 14.

¶7          The appellant filed a petition for EEOC review of the Board's findings. *See* [5 U.S.C. § 7702](b)(1); [5 C.F.R. § 1201.157](). The EEOC found that *Bouffard* did not adhere to the EEOC's Enforcement Guidance and precedential federal sector cases in its analysis of the essential functions of a CBPO, and that it was wrongly decided on that point. *Alvara v. Department of Homeland Security*, EEOC Petition No. 0320110053 at 6 of 12 (July 10, 2014). As such, the EEOC overturned that portion of *Bouffard.* Because the Board relied on *Bouffard* in finding that the essential functions of a CBPO include working rotational shifts and significant amounts of overtime, the EEOC found that the Board's analysis was in error and that its decision constituted an incorrect interpretation of applicable policy directives and Enforcement Guidance, *id.*, and it concluded that the appellant is qualified and can perform the fundamental job duties of a CBPO, *id.* at 7. Although the Board had not made a finding on undue hardship, the EEOC found that it could do so, given that the record was adequately developed. *Id.* The EEOC then found that the agency failed to show that modifying the appellant's work schedule would cause undue hardship, and it concluded that the agency erred in denying the appellant's reasonable accommodation request to work between the hours of 6:00 a.m. and midnight and in removing him. *Id.* at 8. The EEOC thus differed with the Board's decision, which found no disability discrimination. *Id.* at 1.

ANALYSIS

¶8        The EEOC decision, to which we are asked to defer, is unreasonable both from a legal and a management/operational perspective.  At its core, the EEOC decision fundamentally addresses not an interpretation of discrimination law, but rather an agency's ability to determine the essential functions of any given position, in this case, a law enforcement officer position.

¶9        To recapitulate, a unanimous Board held in *Alvara v. Department of Homeland Security*, 116 M.S.P.R. 627 (2011), that the ability to work the graveyard shift and significant overtime was an essential function of the CBPO position for purposes of the relevant disability discrimination regulation defining a qualified individual with disability.

¶10       We did so based on the well-reasoned decision of the EEOC in *Bouffard v. Department of Homeland Security*, EEOC Appeal No. 0120065257, 2008 WL 276452 (E.E.O.C. Jan. 16, 2008), which held that the ability to work rotational shifts and overtime are essential functions of the position, and the accommodation of not having to work rotational shifts and overtime is, in essence, a request to change the essential functions of the job, which the agency is not required to do.[1]  The EEOC has now determined that *Bouffard*, or at least the portion heavily relied upon by the Board in finding that "the essential functions of a Customs and Border Protection Officer include working rotating shifts and significant amounts of overtime," was wrongly decided.  *Alvara*, EEOC Petition No. 0320110053 at 6 of 12.

---

[1] Both the Board and the EEOC agree that, in order to reasonably accommodate an individual, the agency need not restructure a job to eliminate its essential functions. *See Burch v. City of Nacogdoches*, 174 F.3d 615. 621 (5th Cir. 1999) (the Americans with Disabilities Act "does not require an employer to relieve an employee of any essential functions of . . . her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so"); *Johnson v. U.S. Postal Service*, 120 M.S.P.R. 87, ¶ 10 (2013); *see also EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* at 13, 19.

¶11    More importantly, we based our decision on our knowledge of civil service law.    Under the mixed case system governed by 5 U.S.C. § 7702, the Board generally must defer to the EEOC's interpretation of discrimination law.  *E.g.*, *Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 6 (2014); *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 7 (2012).  Likewise, when the EEOC has reasonably interpreted a point of discrimination law, the Board cannot properly apply a different interpretation merely because the Board's interpretation is also reasonable.  *Cf. Fulman v. United States*, 434 U.S. 528, 534-36 (1978) (a reasonable interpretation of a statute by the agency primarily charged with its administration is entitled to deference, even when there is a competing interpretation that is also reasonable).

¶12    However, the Board need not defer to the EEOC's interpretation of what constitutes a civil service law, rule, or regulation, the interpretation of which falls squarely within the purview of the Board's area of expertise.[2]  *Archerda v. Department of Defense*, 2014 MSPB 49, ¶ 28 (citing *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 20 (2013) (the Board generally defers to the EEOC on issues of substantive discrimination law unless the EEOC's decision rests on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law)); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 n.4 (2014) (same).  The relationship between the Board and the EEOC is reflected in the statutory due deference a Special Panel should give to the respective expertise of the Board and the EEOC.  5 U.S.C. § 7702(d)(2)(B); *see King v. Lynch*, 21 F.3d 1084, 1088 (Fed. Cir. 1994) (the court distinguished between discrimination laws and civil service laws by comparing section 7702(b)(3)(B)(i), which references the discrimination laws set out in

---

[2] *See generally Bain v. Office of Personnel Management*, 978 F.2d 1227, 1231-32 (Fed. Cir. 1992) (because the court traditionally upholds an agency's reasonable construction of a statute it administers, the court deferred to the Board's affirmance of the Office of Personnel Management's classification of petitioners as intermittent employees).

subsection (a)(1)(B), with section 7702(c)(2), which references the "civil service laws, rules, regulations, and policy directives").

¶13    Under civil service law, CBPOs are classified as law enforcement officers. They are charged with the safety and security of the American people, protecting the country's borders from terrorism, intercepting the smuggling of humans, drugs and other contraband, preventing illegal migration and the entry of agricultural pests, and facilitating the flow of legitimate trade and travel. The special nature of these jobs is why law enforcement officers are treated differently from other civil servants in everything from essential functions to retirement calculations. *See, e.g.*, 5 U.S.C. § 8331(2); 5 U.S.C. § 8401(17) (definitions of "law enforcement officer" for retirement purposes under the Civil Service Retirement System and the Federal Employees' Retirement System, respectively); 5 U.S.C. § 3307 (providing that agencies may set a maximum age limit for an original appointment to law enforcement officer positions such as CBPOs).

¶14    As with any law enforcement officer organization, exigent circumstances obviously will require the occasional performance of duties during the graveyard shift and/or during overtime. For every officer who cannot perform these essential functions, others will be required to meet these responsibilities. *See, e.g.*, *Silk v. City of Chicago*, 194 F.3d 788, 796-97 (7th Cir. 1999) (coworkers were angry at a police officer who was allowed to work only day shift and light duty assignments due to severe sleep apnea, especially given that he also was able to work a night job teaching classes at a local university).

¶15    The EEOC now asks us to second guess the employing agency in what is an essential function of this position. We refuse to do so. To that end, we note that the Americans with Disabilities Act does not define the term "essential functions." Regulations interpreting the Act, however, provide that "essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires," as distinguished from "marginal

functions." 29 C.F.R. § 1630.2(n)(1). Determining whether a particular function is "essential" or not is generally a factual inquiry, reserved for the finder of fact on a case-by-case basis. *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 915 (10th Cir. 2004); *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006). Absent evidence of discriminatory animus, the Board "generally give[s] substantial weight to the employer's view of job requirements." *Ward v. Massachusetts Health Research Institute, Inc.*, 209 F.3d 29, 34 (1st Cir. 2000). "In other words, [the Board's] inquiry into essential functions 'is not intended to second guess the employer or to require the employer to lower company standards.'" *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006) (quoting *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004)).

¶16 The practice of second guessing also runs contrary to the EEOC's recent case law suggesting that it is an agency's ultimate responsibility to determine what an essential function of a job is. According to the EEOC, in \*\*\**, Complainant v. U.S. Postal Service*, EEOC Appeal No. 0120080613, 2013 WL 8338375 (Dec. 23, 2013):

> The essential functions are the duties of a job - i.e., the outcomes that must be achieved by the person in the position. *Once an agency identifies the essential functions for a position*, the agency can then put in place qualification standards, selection criteria, or employment tests that are designed to determine whether an employee or applicant can perform those essential functions.

*Id*. (italics added).

¶17 Based on the foregoing, we find no compelling reason to defer to the EEOC's decision. *See Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1347 n.5 (Fed. Cir. 2006). Accordingly, we conclude that as a matter of law the EEOC decision is based upon an incorrect interpretation of civil service law, rule, or regulation. In the alternative, we find that the evidence in the record does not support the EEOC decision, and the EEOC decision is so unreasonable that it amounts to a violation of civil service law, rule, or regulation. Thus, the

Board cannot agree with the EEOC decision.  We therefore REAFFIRM our prior decision.  *See* 5 U.S.C. § 7702(c)(2); 5 C.F.R. § 1201.162(a)(2).

## CERTIFICATION

¶18    Having found as a matter of law that the decision of the EEOC in this appeal constitutes an incorrect interpretation of civil service law, or in the alternative, that the evidence in the record does not support the EEOC decision or that the EEOC decision is so unreasonable that it amounts to a violation of civil service law, we hereby CERTIFY this case to the Special Panel under 5 U.S.C. § 7702(d)(1). *See Ignacio v. U.S. Postal Service*, 30 M.S.P.R. 471, 477 (Spec. Pan. 1986).

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.