HOLMES, J., dissenting.
I respectfully dissent. More specifically, I would hold that the district court erred in instructing the jury that there is an adverse-employment-action element embodied in a failure-to-accommodate claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 - 213. I would therefore reverse the district court's judgment and remand for a new trial.[1]
*920 At bottom, I rest this conclusion on our own controlling precedent. I respectfully reject the majority's assertion that reading an adverse-employment-action requirement into the ADA's failure-to-accommodate claim is not "contrary" to that precedent. Maj. Op. at 911. The majority mistakenly "proceeds as though it were writing on tabula rasa " on this issue and, as such, "necessarily discards the contrary judgment arrived at" by our caselaw. Gertz v. Robert Welch, Inc. , 418 U.S. 323, 389, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (White, J., dissenting). I decline to go along on this misguided and troubling trip.
Notably, in E.E.O.C. v. C.R. England, Inc. ("C.R. England "), 644 F.3d 1028 (10th Cir. 2011), we specifically distinguished between ADA discrimination claims predicated on a disparate-treatment theory and those that are predicated on a failure-to-accommodate theory, and we made clear through the content and structure of our analysis that-as between the two-it is only the former theory (i.e., disparate treatment) that includes an adverse-employment-action element. See id. at 1038 & n.10, 1048-50.
More specifically, in our resolution of multiple distinct claims of ADA discrimination that the Equal Employment Opportunity Commission ("EEOC"), as well as the individual plaintiff, brought in C.R. England , we discussed the failure-to-accommodate theory of ADA discrimination approximately ten pages after we first referred to an adverse-employment-action element in discussing discrimination claims based on a disparate-treatment theory.[2] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 1038. And, with our attention squarely focused on the failure-to-accommodate claim, we uttered nary a word about an adverse-employment-action requirement. See C.R. England , 644 F.3d at 1048-50. Put another way, in resolving the failure-to-accommodate claim, the C.R. England panel was mute about an adverse-employment-action *921 requirement. Instead, our analysis there centered solely on an employer's statutory and administrative obligations to reasonably accommodate an employee's disability. See id. And, more specifically, we stated there-with deafening silence regarding an adverse-employment-action requirement-that § 12112(b)(5)(A)"establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them." Id. at 1048 (quoting Selenke v. Med. Imaging of Colo. , 248 F.3d 1249, 1261 (10th Cir. 2001) ).
The C.R. England panel's utter disregard of an adverse-employment-action requirement-because it was irrelevant in applying the standards defining the unlawfulness of an employer's failure to provide a reasonable accommodation-is an approach mirrored in our other failure-to-accommodate ADA cases. See, e.g. , Punt v. Kelly Servs. , 862 F.3d 1040, 1048 (10th Cir. 2017) ("[A]ssuming the employee has provided notice to the employer of her disability, any limitations which result therefrom, and the accommodation she wishes to receive, then the employer's failure to provide a reasonable accommodation for the disability establishes the required nexus between the disability and the alleged discrimination without the need to delve into the employer's subjective motivations." (emphasis added) ); Bartee v. Michelin N. Am., Inc. , 374 F.3d 906, 912 n.4 (10th Cir. 2004) (describing the "prima facie failure to accommodate claim" without any reference to an adverse-employment-action requirement, and, more specifically, observing that as to such a claim, the final element is not an adverse employment action like a termination but rather the employer's failure to reasonably accommodate the employee's disability); Smith v. Midland Brake, Inc. , 180 F.3d 1154, 1169, 1179 (10th Cir. 1999) (en banc) (noting that "[t]he unvarnished obligation derived from the statute is this: an employer discriminates against a qualified individual with a disability if the employer fails to offer a reasonable accommodation," and recounting the elements of an employee's prima facie case with no mention of an adverse-employment-action requirement).
In my view, the majority's misguided endeavor to incorporate an adverse-employment-action requirement into an ADA failure-to-accommodate claim primarily stems from its "confusion[,] ... [in] failing to clearly differentiate between disparate treatment and failure to accommodate claims": the former require a showing of an adverse employment action and the latter do not. Megan I. Brennan, Need I Prove More: Why an Adverse Employment Action Prong Has No Place in a Failure to Accommodate Disability Claim , 36 HAMLINE L. REV . 497, 501 (2013) ; see id. at 499-500, 503 ("Confusion arises because the failure to accommodate is not 'discrimination' as the concept is traditionally understood.... In a disparate treatment discrimination case under the ADA, an adverse employment action is one that causes a material change in the terms or conditions of employment.... In short, adverse employment actions are needed to establish disparate treatment and retaliation claims under the ADA. A failure to accommodate claim may be successful absent an adverse action." (footnotes omitted) ); see also Kevin W. Williams, The Reasonable Accommodation Difference: The Effect of Applying the Burden Shifting Frameworks Developed Under Title VII in Disparate Treatment Cases to Claims Brought Under Title I of the Americans with Disabilities Act , 18 BERKELEY J. EMP . & LAB. L. 98, 152 (1997) ("[I]n a claim based on a failure to reasonably accommodate, the causal relationship between the adverse action and the disability is already established . The purpose of the plaintiff's prima facie case under *922 these circumstances is not to raise a rebuttable presumption of discriminatory intent. Instead, the 'elusive factual question' to be determined is whether the employer complied with its statutory obligation to provide reasonable accommodation ." (emphases added) ); cf. 1 DISABILITY DISCRIMINATION IN THE WORKPLACE § 2:13, Westlaw (database updated Apr. 2018) ("While a delay in satisfying an employee's requests for a reasonable accommodation might be cognizable as a failure-to-accommodate claim, that delay does not amount to a significant change in the plaintiff's employment status and, therefore, is not actionable as an adverse action supporting a discrimination claim." (emphasis added) ).
This confusion is not shared by our controlling precedent.[3] See Punt , 862 F.3d at 1048 ("There is at least one type of ADA claim, however, which does not require any evidence of discriminatory intent, whether direct or circumstantial: a failure-to-accommodate claim. ... 'Unlike other enumerated constructions of "discriminate," this construction does not require that an employer's action be motivated by a discriminatory animus directed at the disability. Rather, any failure to provide reasonable accommodations for a disability is necessarily "because of a disability"-the accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability-and no proof of a particularized discriminatory animus is exigible.' " (quoting Higgins v. New Balance Athletic Shoe, Inc. , 194 F.3d 252, 264 (1st Cir. 1999) ) ); Smith , 180 F.3d at 1178 n.12 ("The purpose of a burden shifting approach [first established in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ] is a bit different in an ADA Failure to Accommodate case. In such a case, the Congress has already determined that a failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination. See 42 U.S.C. § 12111(b)(5)(A).... Thus, we use the burden-shifting mechanism, not to probe the subjective intent of the employer, but rather simply to provide a useful structure by which the district court, when considering a motion for summary judgment, can determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered." (second emphasis added) ). And this confusion of the majority likely explains why our controlling precedent has taken a different path than the majority has on the question of whether an adverse-employment-action requirement is part and parcel of an ADA failure-to-accommodate claim. Needless to say, however, the path of our precedent is binding.[4] Consequently, *924 I must respectfully reject the majority's divergent efforts.
In attempting to explain the unmistakable and telling absence of any mention of an adverse-employment-action element in our prior recitation of the requisite elements of a failure-to-accommodate claim, the majority says the following: "[I]t may well have been that what we were doing is simply setting forth the failure-to-accommodate requirements of § 12112(b)(5)(A), not all the elements of an ADA claim based on failure to accommodate." Maj. Op. at 913. I am not persuaded; nor should you be.
The majority need not speculate about what we could have been doing in our prior, binding cases; their plain text tells us what we were doing. For example, in Smith , we expressly described what the plaintiff must show "[t]o survive summary judgment on an ADA claim of failure to accommodate." 180 F.3d at 1179. Most significantly, in clear language, we stated the elements of an employee's "prima facie case." Id. That is, Smith detailed "all the elements of an ADA claim based on failure to accommodate," Maj. Op. at 913; it was not simply informing the reader that discrimination under the ADA includes a failure to accommodate, see § 12112(b)(5)(A).[5] If, as the majority would have it, an adverse-employment-action requirement is an essential element of a plaintiff's failure-to-accommodate ADA claim, it defies logic that the Smith panel would not have included that requirement in its statement of the prima facie case. But it did not do so. See 180 F.3d at 1179. And the reason is patent: under our controlling precedent, an adverse employment action is not a required element of an ADA failure-to-accommodate claim.[6]
Bartee 's analysis forcefully suggests a similar conclusion. There, it is very significant that we juxtaposed the elements of an *925 ADA discrimination claim based on a disparate-treatment theory with the elements of such a claim based on a failure-to-accommodate theory. See 374 F.3d at 912 n.4. And we indicated that the element in the former of an adverse employment action (i.e., the employer's discharge of the employee because of his disability) was satisfied in the employee's "prima facie failure to accommodate claim" by the employer's failure to reasonably accommodate the employee's disability by placing him in a different job. Id. Under these circumstances, it would strain credulity to contend-as the majority, in effect, does-that, while conducting this failure-to-accommodate analysis that expressly elides an adverse-employment-action element, the Bartee panel nevertheless tacitly understood that any statement of all of the requisite elements of a failure-to-accommodate claim necessarily must include an adverse-employment-action element. We should not accept such an implausible contention.
An appellate court that effectively declares that it is delineating the elements of "a prima facie failure to accommodate claim," as we have- Bartee , 374 F.3d at 912 n.4 ; see Smith , 180 F.3d at 1179 -and then excludes (as the majority would have it) an ostensibly essential element of that claim (i.e., an adverse-employment-action requirement) would be running the serious risk that the lower courts and the public, if not the parties, would be misled about the contours of the law. And I am not inclined to believe that my colleagues in our previous failure-to-accommodate cases would have been so cavalier. Therefore, I respectfully decline to be moved by the majority's misguided efforts to find meaning from silence.
For the foregoing reasons, I respectfully dissent. I would reverse the district court's judgment and remand for a new trial.[7]

In reaching the conclusion that a reversal and remand is called for, I necessarily reject the County's suggestion that, even if the jury was wrongly instructed that an adverse employment action is an element of a failure-to-accommodate claim, the existence of that error "does not mean that [Ms. Exby-Stolley] was prejudiced," because the County "introduced evidence refuting [Ms. Exby-Stolley's] failure to accommodate theories." Aplee.'s Resp. Br. at 11. This argument is wholly unpersuasive because "[w]here an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed 'if the jury might have based its verdict on the erroneously given instruction.' " Wankier v. Crown Equip. Corp. , 353 F.3d 862, 867 (10th Cir. 2003) (quoting Townsend v. Lumbermens Mut. Cas. Co. , 294 F.3d 1232, 1242 (10th Cir. 2002) ). And this " 'might have' threshold, as its language suggests, requires reversal 'even if that possibility [of the jury basing its verdict on the erroneous instruction] is very unlikely.' " Lederman v. Frontier Fire Protection, Inc. , 685 F.3d 1151, 1159 (10th Cir. 2012) (quoting Level 3 Commc'ns, LLC v. Liebert Corp. , 535 F.3d 1146, 1158 (10th Cir. 2008) ). Here, the threshold is easily crossed: the jury returned a verdict for the County after indicating on the Verdict Form that Ms. Exby-Stolley had failed to prove that she was either "discharged from employment," "not promoted," or subjected to any "other adverse action" by the County. Aplt.'s App., Vol. II, at 419 (Verdict Form, dated Oct. 11, 2016). It therefore strains credulity to claim that the jury definitely did not base its verdict on the faulty instruction regarding an adverse employment action, when the lack of such an action was the very reason the jury decided in favor of the County.

In C.R. England , we observed that "[i]n order to demonstrate 'discrimination,' a plaintiff generally must show that he has suffered an 'adverse employment action because of the disability.' " 644 F.3d at 1038 (footnote omitted) (quoting Mathews v. Denver Post , 263 F.3d 1164, 1167 (10th Cir. 2001) ). However, we did so only in explicating the standards for establishing ADA discrimination under a disparate-treatment theory. In this regard, we specifically noted in a footnote (i.e., footnote 10)-which was directly appended to the sentence discussing the general need to demonstrate an adverse employment action-that the EEOC was predicating the discrimination claims at issue on 42 U.S.C. § 12112(b)(1), which "only prohibits 'limiting, segregating, or classifying a[n] ... employee in a way that adversely affects the opportunities or status of such ... employee because of the disability of such ... employee.' " Id. at 1038 n.10 (alteration, omissions, and emphasis in original) (quoting § 12112(b)(1) ); see id. (noting that this is the provision "upon which the EEOC's discrimination claim is based"). In other words, C.R. England 's reference there to an adverse-employment-action requirement was language that specifically and exclusively pertained to the ADA discrimination claims under a disparate-treatment theory-not such claims under a failure-to-accommodate theory. To be sure, the C.R. England panel subsequently did discuss an adverse-employment-action requirement in connection with an ADA retaliation claim. See id. at 1050-51. But, tellingly, the panel did not do so in setting forth the standards applicable to a failure-to-accommodate claim. See id. at 1048-49.

And the confusion is certainly not shared by the EEOC-the federal agency charged with administering the ADA. See Brennan, supra , at 505 ("The EEOC's regulations and Interpretive Guidance on the ADA also suggest an adverse employment action is not an element of a failure to accommodate claim."); see also U.S. Equal Emp. Opportunity Comm'n, Enf't Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (2002), available at https://www.eeoc.gov/policy/docs/accommodation.html (stating under the heading "Burdens of Proof" that "[o]nce the plaintiff has shown that the accommodation s/he needs is 'reasonable,' the burden shifts to the defendant/employer to provide case-specific evidence proving that reasonable accommodation would cause an undue hardship in the particular circumstances," with deafening and telling silence regarding an adverse-employment-action requirement in plaintiff's burden of proof).

And, though the majority strains mightily to paint a contrary picture, see Maj. Op. at 913-15, 915-17 & n.7, this is also the path followed in the decisions of several of our sister circuits. Beginning with E.E.O.C. v. AutoZone, Inc. , 630 F.3d 635 (7th Cir. 2010), the majority's assertion of the "most important" point that supposedly discounts the significance of this case is flawed. Maj. Op. at 914-15. Specifically, the majority's contention that this case ostensibly "provides no analysis," id. , for its conclusion that no adverse-employment-action requirement is embodied in an ADA failure-to-accommodate claim bespeaks the same ADA-claims confusion that should be familiar to us now. That is, the majority's assertion stems from its failing to recognize that AutoZone 's determination is based on that panel's explicit awareness that an adverse-employment-action requirement is a feature of an ADA disparate-treatment claim, not a failure-to-accommodate claim. See AutoZone , 630 F.3d at 638 n.1 ("The district court correctly identified the components of the reasonable accommodation test.... When applying the facts to the law, however, the court appears to have mistakenly applied an element of the disparate treatment test as part of its evaluation of reasonable accommodation. ... No adverse employment action is required to prove a failure to accommodate." (citation omitted) ). As we have seen, this distinction between the two types of ADA claims is critical. And, yet, it is a principal source of confusion in cases outside of our circuit-and also-underneath our own tent-in the majority's handicraft.
Going beyond AutoZone , the majority's strained efforts lead it to distinguish and discount other cases of our sister circuits principally on the basis that, in electing to omit an adverse-employment-action element from their recitation of the requisite elements of an ADA failure-to-accommodate claim, these cases have not actually come to grips with-or opined on-"whether there was an adverse employment action" component "at issue" in an ADA failure-to-accommodate claim. Maj. Op. at 916 n.7. As I point out with even greater force and certainty infra in discussing our own precedent, I am disinclined to conclude that the cadre of thoughtful federal judges who signed off on these circuit decisions would cavalierly tolerate the serious risk that, by omitting an ostensibly essential element (i.e., an adverse-employment-action element) from their listings of the requisite elements of a failure-to-accommodate claim, they would mislead the public and their lower courts regarding the state of the relevant ADA law. I am much more inclined to presume that, when the judges comprising these circuit panels omitted an adverse-employment-action element from their listings of requisite elements of a failure-to-accommodate claim, they intended to do so. That is, they intended to accurately represent to the public and their lower courts the nature of the relevant ADA law-viz. , an adverse-employment-action element is not part of an ADA failure-to-accommodate claim. Moreover, contrary to the majority's suggestion, some of these circuit panels did not just rely on a recitation of requisite elements, at least standing alone, to communicate their views regarding the absence of an adverse-employment-action element from an ADA failure-to-accommodate claim. See, e.g. , E.E.O.C. v. LHC Grp., Inc. , 773 F.3d 688, 703 n.6 (5th Cir. 2014) ("[W]e note that although their methods of proof are related, '[a] failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment.' ... A failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered adverse employment action." (quoting Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agric. & Mech. Coll. , 360 F. App'x. 562, 565 (5th Cir. 2010) ) ); Lucas v. W.W. Grainger, Inc. , 257 F.3d 1249, 1255 (11th Cir. 2001) ("An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability-unless doing so would impose undue hardship on the employer." (quoting 42 U.S.C. § 12112(b)(5)(A) ; 29 C.F.R. § 1630.9(a) ) ). And this includes the cases from the Third Circuit, which reasons that an employer's failure to provide a reasonable accommodation is categorically, without more , a species of adverse employment action. See, e.g. , Colwell v. Rite Aid Corp. , 602 F.3d 495, 504 (3d Cir. 2010) ("Adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities." (quoting Williams v. Phila. Hous. Auth. Police Dep't , 380 F.3d 751, 761 (3d Cir. 2004) ) ); Williams , 380 F.3d at 771 (noting that "a failure to make a reasonable accommodation for a disabled and qualified employee constitutes discrimination under the ADA" and, as applied, that "[i]f a trier of fact concludes that Williams was disabled, however, it could also find that the failure to continue Williams' paid employment as a member of the radio or training unit was a failure to reasonably accommodate and accordingly constituted an adverse employment action under the ADA" (emphasis added) ); cf. Brennan, supra , at 511 (though recognizing that courts like the Third Circuit do not require plaintiffs to establish an adverse employment action apart from an employer's failure to provide a reasonable accommodation, expressing disapproval of this approach because it imports the disparate-treatment concept of an adverse employment action into the realm of a failure-to-accommodate claim, which is "like trying to fit a square peg into a round hole"). Indeed, when federal district courts are included, one commentator has opined that, "[w]hen courts have been faced with the issue of whether an adverse employment action is needed to establish a prima facie failure to accommodate claim," "the majority" has concluded that it is "not" needed. Brennan, supra , at 507; see id. at 509 (noting that "the vast majority of courts correctly appreciate that the failure to accommodate is itself an act of discrimination that violates the ADA"). Therefore, we should not be persuaded by the majority's strained efforts to convince us that most courts subscribe to its (errant) view.

In our en banc decision in Smith , we "invok[ed] the familiar burden shifting approach" of McDonnell Douglas , recognizing that this "approach has been specifically adopted [sic] to ADA claims for failure reasonably to accommodate the disabled employee." 180 F.3d at 1178. If, as the majority contends, the McDonnell Douglas "framework enables the plaintiff to prove her claim in its entirety," Maj. Op. at 909, it would be reasonable to expect-as I maintain-that the adapted version of this framework that Smith employed also permitted the employee in that case to prove in its entirety his failure-to-accommodate claim. And, yet, the Smith court's recitation of the requisite elements of a prima facie case of a failure-to-accommodate claim made no mention of an adverse-employment-action element. Why? The answer should be quite clear by now-because, under our precedent, there is no such element in a failure-to-accommodate claim.

Lest there be any doubt that Smith intended its discussion to be comprehensive, it bears noting that the panel went on to discuss the employer's proof burden if the employee successfully established its prima facie case and what the employee ultimately needed to demonstrate to survive an employer's summary-judgment motion. Smith , 180 F.3d at 1179. In this extended discussion, there is no mention of an adverse-employment-action element.

Even if the question of whether an ADA failure-to-accommodate claim includes an adverse-employment-action element were actually an open one in this circuit (which it is not), I would have little reason to endorse the majority's textual analysis-that is, the majority's suggestion that § 12112(a)'s language regarding "other terms, conditions, and privileges of employment" is a "shorthand" for an adverse-employment-action requirement. Maj. Op. at ----. The majority's assertion to this effect only rests on a thin reed of authority from outside of our circuit. For example, contrary to the majority's intimation, the Eighth Circuit in Kelleher did not scrutinize at all the meaning of the other-terms-conditions-privileges language, but instead predicated its analysis on the district court's and the parties' agreement that the ADA disparate-treatment and failure-to-accommodate claims at issue could be conflated and addressed as one claim . Kelleher v. Wal-Mart Stores, Inc. , 817 F.3d 624, 631 & n.4 (8th Cir. 2016) ("Kelleher included her disability discrimination claim and her 'failure to continue to accommodate' claim as Counts 1 and 2, respectively, in her first amended complaint, but the district court addressed those claims as a single failure to accommodate claim. On appeal, Kelleher also treats them as a single claim, and we will do the same ." (emphasis added) ). As we have seen, however, such an agreement regarding the conflation of the two claims was misguided because these claims have distinct elements; in particular, the disparate-treatment claim has an adverse-employment-action requirement and the failure-to-accommodate claim does not. As for the D.C. Circuit's Marshall decision, the court does make an observation seemingly helpful to the majority's position: "As the language of § 12112(a) makes clear, for discrimination (including denial of reasonable accommodation) to be actionable, it must occur in regard to some adverse personnel decision or other term or condition of employment." Marshall v. Fed. Exp. Corp. , 130 F.3d 1095, 1099 (D.C. Cir. 1997). But the court makes this observation without citation to further authority or even further discussion, and it does so-not in the context of resolving the merits of an ADA failure-to-accommodate claim-but, rather, in connection with rendering a holding regarding administrative exhaustion. See id. at 1098-99. In sum, this thin reed of marginally relevant authority has little power to persuade and, more specifically, would not make me inclined to endorse the majority's "shorthand" theory-i.e., its view that § 12112(a)'s language regarding "other terms, conditions, and privileges of employment" is a shorthand for an adverse-employment-action requirement.